THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
WALTER STUART, PERRY STUART and LONG ISLAND AIR-
PÓRTS LIMOUSINE SERVICE CORP., Appellants.

Second Department, December 22, 1986

## APPEARANCES OF COUNSEL

*Gulotta & Stein (Frank A. Gulotta* of counsel), for appellants.

*Patrick Henry, District Attorney (Steven A. Hovani* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

On these appeals, the defendants challenge the judgments of conviction rendered against them, and the order denying their postjudgment motion for vacatur *(see,* CPL 440.10). Although we conclude that the defendants' claims are, for the most part, unavailing, we find merit to their assertion

that their convictions on certain counts were not supported by legally sufficient evidence. Accordingly, we modify the judgments and remit the case for resentencing on the remaining counts.

■ We commence our analysis by addressing the defendants' contention that the denial of that branch of their pretrial motion which was to dismiss the indictment was error. A review of the Grand Jury minutes and the papers filed in conjunction with the defendants' motion discloses that neither the conduct of the prosecuting attorneys nor that of the police officials involved in the investigation was so egregious as to require dismissal of the indictment (see, People v Isaacson, 44 NY2d 511; People v Rao, 73 AD2d 88; People v Monroe, 125 Misc 2d 550). Moreover, the defendants did not sustain their weighty burden of establishing that the instant prosecution constituted a selective application of the law resulting from a pattern of impermissible discrimination consciously practiced (see, Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686, 693-695; People v Goodman, 31 NY2d 262, 268; People v Carter, 86 AD2d 451, 453). Further, the defendants failed to adduce factually detailed sworn allegations which would entitle them to a hearing on this issue (see, Matter of 303 W. 42nd St. Corp. v Klein, supra, at pp 695-696).

■ In addition, the denial of that branch of the defendants' pretrial motion which was to suppress all of the physical evidence seized pursuant to the execution of two search warrants at the office of the defendant Long Island Airports Limousine Service Corp. (hereinafter LIALS) on October 13, 1982 was not error. With regard to the facial validity of the warrants, the descriptions contained therein of the items to be seized were sufficiently definite, under the facts and circumstances of this case, to enable the police officers executing the warrants to properly identify the documents to be seized (see, People v Nieves, 36 NY2d 396, 401). As to the manner in which the warrants were executed, the evidence supports the suppression court's determination that the executing officers were adequately apprised of the terms of the warrants, the spatial limitations contained in the warrants were substantially complied with, and a good-faith effort was made to seize only those items specifically enumerated in the warrants (see, United States v Heldt, 668 F2d 1238, cert denied sub nom. Hubbard v United States, 456 US 926). In any event, any items improperly seized were suppressed by the hearing court.

The defendants also challenge the legal sufficiency of the

evidence supporting each of the counts upon which they were convicted. In passing upon their contention, we must view the evidence in the light most favorable to the prosecution *(see, e.g., People v Malizia,* 62 NY2d 755, 757, *cert denied* 469 US 932)*, bearing in mind that issues of credibility are to be resolved by the trier of fact *(see, People v Malizia, supra,* at p 757; *People v Shapiro,* 117 AD2d 688)*. The test for legal sufficiency is whether " 'any* rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt' " *(People v Contes,* 60 NY2d 620, 621, quoting from *Jackson v Virginia,* 443 US 307, 319)*. Moreover, because the proof adduced by the prosecution in this case was wholly circumstantial with respect to certain counts, we must determine whether the facts from which the inference of guilt was drawn reasonably permitted the trier of fact to conclude that the evidence excluded to a moral certainty every reasonable hypothesis save that of guilt *(see, People v Betancourt,* 68 NY2d 707, 708-709; *People v Marin,* 65 NY2d 741, 742; *People v Giuliano,* 65 NY2d 766, 767-768; *People v Paul,* 114 AD2d 426).

The defendants Walter Stuart and Perry Stuart served as president and vice-president, respectively, of the defendant LIALS, a corporation engaged in the business, among other things, of providing public transportation between Nassau and Suffolk Counties and Kennedy and La Guardia Airports and Queens Plaza in Queens County. The defendants' convictions of attempted grand larceny in the second degree and offering a false instrument for filing in the first degree were based upon their participation in the Mass Transit Operating Assistance Program (hereinafter MTOA), a program providing carriers with subsidies from the State, through the county, based upon a formula taking into account the number of revenue-generating miles traveled and the number of revenue-paying passengers carried on "line run[s]", i.e., regular trips between established locations pursuant to fixed, predetermined time schedules. During the second quarter of 1982, operators were entitled to payment under the MTOA program at the rate of $0.135 per revenue passenger and $0.415 per revenue mile; after the amount of reimbursement was calculated, it was then discounted to 83%. According to the People, the defendants filed a quarterly report, as required, with the transportation division of the Suffolk County Planning Department for the quarter in question, which falsely overstated mileage and passenger counts on their airport line runs and

Queens Plaza line runs with the intent to obtain funds in excess of the amount to which they were entitled. However, during the trial, the prosecutor specifically and unequivocally withdrew any claims by the People with respect to falsification of mileage counts, and undertook to prove the two counts in question solely on the basis of false passenger counts.

There was no dispute at the trial that the figures contained in the quarterly report purporting to reflect the total numbers of passengers carried during that quarter were inaccurate. In fact, a comparison of the quarterly report with the defendants' own summaries of passenger counts for individual airport line runs during that quarter revealed an overstatement of 17,798 passengers in the report. On the basis of the formula in effect at the time, that overstatement would have resulted in an overpayment to the defendants of approximately $1,994.

Martin Gach, who had served as a consultant to the defendants during the relevant time period, testified that he had prepared the quarterly report in question. According to Gach, he was told by the defendant Perry Stuart to obtain the passenger count figures for airport runs, to be included in the quarterly report, from a certain record book kept on Perry Stuart's desk. However, Gach testified that he had mistakenly taken the wrong book, which contained total passenger counts (including runs other than airport runs). Consequently, Gach had inadvertently inserted the wrong figures in the quarterly report. Gach further testified that in October 1982, an audit of LIALS was conducted by Nassau County and that, during the course of that audit, Gach's error was first detected by Perry Stuart, who immediately advised the auditor of the resulting inaccuracy in the quarterly report. However, in sharp contrast, John Dorosk, the Nassau County Auditor, testified that he had never been shown the book from which Gach had allegedly obtained the erroneous passenger counts, nor had he ever been told that the figures in the quarterly report were in error.

The contradictory testimony of Gach and Dorosk presented a sharp issue of credibility for the trier of fact. The trial court, by its verdict, apparently resolved that issue in favor of Dorosk, thereby rejecting Gach's claim that the erroneous passenger counts were placed in the report as the result of his inadvertence and without the knowledge of the defendants. However, it does not follow that the remaining evidence with respect to the two counts in question was sufficient to sustain the convictions thereunder, and such

evidence did not, in our view, exclude to a moral certainty every reasonable hypothesis of innocence *(see, People v Levine,* 65 NY2d 845, 847; *People v Giuliano,* 65 NY2d 766, 767-768, *supra; People v Marin,* 65 NY2d 741, 742, *supra).* Such evidence established no more than that the corporate defendant LIALS filed a quarterly report with Suffolk County, signed by the defendant Walter Stuart, containing incorrect passenger counts for airport line runs during the quarter in question, and that this inaccuracy was not brought to the attention of the auditor by Gach or by the individual defendants Walter Stuart or Perry Stuart at the subsequent audit at which they were present. We simply cannot conclude that the foregoing facts point inexorably to the inference that the quarterly report was filed with the knowledge that it contained false information and with the intent to defraud *(see,* Penal Law § 175.35), or with a larcenous intent *(see,* Penal Law § 155.05 [1]; § 155.35). Accordingly, the defendants' convictions of attempted grand larceny in the second degree and offering a false instrument for filing in the first degree, and the sentences imposed thereon, must be reversed and vacated, and those counts of the indictment dismissed.

The three defendants were also convicted of two counts of falsifying business records in the second degree. According to the People, LIALS had obtained a privilege permit from the Port Authority of New York and New Jersey (hereinafter the Port Authority) which authorized LIALS to provide transportation service at Kennedy and La Guardia Airports in return for payment to the Port Authority of a percentage of the gross receipts generated in the transport of passengers to and from those airports. Under the permit, LIALS was required to file regular reports of gross receipts with the Port Authority and, in addition, the Port Authority was entitled to audit LIALS for the purpose of verifying the accuracy of the latter's reports and payments. Among the records relied upon by the Port Authority in conducting its audits of LIALS were daily dispatch sheets reflecting "[s]pecials", i.e., nonline runs such as door-to-door pickups. The gross receipts upon which the Authority calculated its fee included the fares collected on airport line runs and those collected on airport "[s]pecials". It was the People's contention that the "Specials" sheets for November and December 1980, and those for the year 1981, were falsified by the defendants so as to understate the fares collected on airport "Specials", and, therefore, resulted in a reduction of the amount of the fee payable to the Port Author-

ity. Thus, the prosecution elicited testimony from several persons who, as LIALS employees, had regularly rewritten "Specials" sheets so as to change the points of origin or destination to locations other than Kennedy or La Guardia Airport without altering the over-all mileage traveled. Moreover, the prosecution adduced testimony from these witnesses that the alteration of "Specials" sheets had been done with the knowledge and, in some cases, at the specific direction of the defendants Walter Stuart and Perry Stuart.

■ In our view, the foregoing evidence was sufficient to sustain the trial court's verdict on the two counts in question. First, the "Specials" sheets clearly constituted writings maintained by LIALS for the purpose of evidencing or reflecting its condition or activity, thereby satisfying the statutory definition of a "business record" (see, Penal Law § 175.00 [2]). Second, the inference of guilt, i.e., that the defendants caused false entries to be made in their business records with the intent to defraud (see, Penal Law § 175.05 [1]), was consistent with the facts proved, and excluded " 'to a moral certainty' every reasonable hypothesis of innocence" (People v Benzinger, 36 NY2d 29, 32, quoting from People v Borrero, 26 NY2d 430, 435; see also, People v Paul, 114 AD2d 426, supra).

The remaining challenge to the sufficiency of the evidence is directed at count No. 12 of the indictment, under which the defendants Walter Stuart and LIALS were convicted of criminal contempt in the second degree (see, Penal Law § 215.50 [3]). The evidence adduced with regard to this count established that on October 13, 1982, all of the defendants were served with a subpoena duces tecum, directed to Walter Stuart, as the president of LIALS, ordering the production before the Grand Jury of "[r]ecords relating to NYS Mass Transportation Operating Assistance Program, from January 1, 1981 to present [October 12, 1982, the date of the subpoena]" including, among other things, "[a]ny record known as the Daily Calendar, 'the Book', or by any other name, which indicates, by date, the total number of passenger [sic] carried and the dollar revenue received for door to door transport service, also known as specials". A police officer involved in the investigation testified that on October 13, 1982, during the execution of the search warrants at the LIALS office, he had observed and photographed a book matching the foregoing description in a drawer in the desk of the defendant Walter Stuart; however, the book in question had never been produced in response to the subpoena.

■ We conclude that the People's evidence was sufficient to establish (1) that "the Book", containing daily records of passenger counts and revenues, was related, in fact, to the MTOA program because such information was relevant in determining the subsidies to which the defendants were entitled under that program; and (2) that "the Book" did, in fact, exist and that the failure to produce it constituted "[i]ntentional disobedience or resistance" to the subpoena (see, Penal Law § 215.50 [3]).

■ We next address the defendants' contention that the sentences imposed were, in part, unauthorized and were, in any event, excessive. The sentences of one year of imprisonment imposed on the individual defendants, upon their conviction of class A misdemeanors, were not rendered unlawful by reason of the amendment of Penal Law § 70.15 (1), which, *inter alia*, provides for maximum terms of imprisonment of six months for most class A misdemeanors for first offenders. The effective date of the amendment was November 1, 1984 (see, L 1984, ch 673, § 1), and it was not intended to apply to crimes committed prior to that date (see, *People v Archer*, 121 AD2d 730; see also, *People v Oliver*, 1 NY2d 152). However, although we express no view as to the appropriateness of the sentences imposed on the remaining counts, it is not clear whether the sentencing court was influenced by the convictions for attempted grand larceny in the second degree and offering a false instrument for filing in the first degree, which we are now reversing and vacating. Because the sentencing court should have the opportunity to exercise its discretion without considering those convictions, we vacate the remaining sentences and remit the matter to the County Court for resentencing (see, *People v Cohen*, 50 NY2d 908, 910; *People v Anderson*, 111 AD2d 124, 125; *People v Camilloni*, 92 AD2d 745, 746).

■ Finally, we find no error in the denial of the defendants' motion to vacate the judgments of conviction. The motion, which was predicated upon the ground of newly discovered evidence (see, CPL 440.10 [1] [g]), was made more than one year after the discovery of the purported new evidence, thereby supporting the County Court's determination that the motion was not made with due diligence (see, CPL 440.10 [1] [g]). Moreover, the defendants did not sustain their burden of proving, by a fair preponderance of the evidence, that the newly discovered evidence probably would have changed the result in the event of a new trial (see, *People v Salemi*, 309 NY

208, 216; *People v Latella,* 112 AD2d 321, 322; *People v Balan,* 107 AD2d 811, 814-815; *People v Anfossi,* 125 AD2d 317).

We have considered the remaining contentions advanced by the defendants and find them to be without merit.

LAZER, J. P., MANGANO, BRACKEN and KOOPER, JJ., concur.

Ordered that three judgments of the County Court, Suffolk County, all rendered January 15, 1985, are modified, on the law, by reversing the convictions of attempted grand larceny in the second degree and offering a false instrument for filing in the first degree, vacating the sentences imposed thereon, dismissing those counts of the indictment, and vacating the sentences imposed upon the remaining convictions. As so modified, the judgments are affirmed, and the matters are remitted to the County Court, Suffolk County, for resentencing in accordance herewith; and it is further,

Ordered that the order of the same court, dated March 6, 1986, is affirmed.