■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY LAUDONIO, Appellant.—Appeal by the defendant from a judgment of the County Court, Suffolk County (Tisch, J.), rendered July 1, 1986, convicting him of robbery in the first degree, kidnapping in the second degree, assault in the second degree, and burglary in the third degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The instant appeal involves the October 5, 1984 kidnapping and assault of the complainant, a jewelry store owner, and the burglary, later that same day, of the complainant's store by the defendant and two unidentified accomplices. The trial testimony established that on the day in question the complainant left his store at about 8:30 P.M. after engaging the store's alarm system. When he arrived home, the complainant was approached by two men who forced him into his car at gunpoint. The complainant was handcuffed and blindfolded and jewelry was taken from his person as his car was being driven by one of his abductors. The vehicle then stopped at an area which the complainant believed to be a train station. The two men exited the car and spoke to a third individual. At that point, the tape around the complainant's eyes loosened and the complainant observed the third individual who he believed to be the defendant. The complainant had known the defendant socially for about three years.

The complainant was then placed in the trunk of the car and the car was driven to a motel. The complainant was taken from the trunk and brought into a room where he was beaten and questioned about the combination to his store's safe and the code number for the store's alarm. Thereafter, two of the men left the motel to go to the complainant's store, while the defendant remained with the complainant. Although his eyes were still covered, the complainant was able to catch glimpses of the defendant who was wearing a bracelet which the complainant had previously sold to him. Once the two men

returned to the motel, the complainant was again placed into the trunk of the car and was later thrown out on a street corner.

The trial testimony established that the complainant's store was burglarized that evening and the alarm system had been turned off. On October 6, 1984, the complainant was interviewed by the police and gave them a detailed written statement.

On October 9, 1984, the defendant was questioned by the police. After waiving his *Miranda* rights, the defendant stated "I had nothing to do with [the complainant's] robbery". When confronted with the fact that the complainant had identified him as one of the attackers, the defendant stated "He [the complainant] couldn't have seen me. He had tape over his eyes". After extensive questioning, the defendant admitted that he had conspired with his two accomplices to rob the complainant. On the day in question, he dropped his two accomplices at the complainant's home. Thereafter, he rented a room at a local motel and later met his accomplices at a train station. The complainant was placed in the trunk and brought to the motel room. The defendant stated that he left the motel "[w]hen it looked like trouble" and returned home.

At the trial, the defense introduced evidence seeking to establish that the complainant had a grudge against the defendant because he believed the defendant broke up the complainant's engagement with a woman and that, as a result, the complainant contrived the kidnapping and burglary incident to get back at the defendant. Evidence was also adduced seeking to establish that the complainant owed the defendant the sum of $30,000. The complainant denied these allegations.

At trial, during the redirect examination of the detective who took the complainant's written statement on October 6, 1984, the detective was shown the statement and was permitted to testify that the complainant did identify someone in that statement. The complainant's statement was then admitted into evidence over the defense counsel's objection. The trial court determined that since the defense counsel, during his cross-examination of the detective, inquired to some degree about what the complainant told him, the court would "permit the statement in so the jury [could] determine what in fact, [the complainant] told him".

It is well established that a witness's prior consistent statement may not be utilized to bolster his or her trial testimony

unless that testimony has been assailed by the opposing party, either directly or by inference, as a recent fabrication *(see, People v Davis,* 44 NY2d 269). In such instances, the prior statement must have been made at a time when no motive to falsify existed *(see, People v Davis, supra; People v Dillard,* 117 AD2d 817). In the case at bar there is no basis in the record upon which to conclude that the defense counsel assailed the complainant's trial testimony as a recent fabrication. In fact, the defense took the position that the complainant's entire explanation of the burglary and kidnapping was a falsehood from the very beginning *(see, People v Davis, supra).* The defense maintained that the complainant had as much of a motive to falsify on October 6, 1984, when the statement was given, as he did at the time of trial *(see, People v Davis, supra).* Accordingly, the trial court's evidentiary ruling cannot be justified. Moreover, the defense counsel claims that he did not open the door to the admission of the complainant's entire statement by reason of his limited cross-examination of the detective regarding certain portions of that statement *(see, People v Dillard, supra).*

We conclude, however, that the error in admitting complainant's statement into evidence was harmless in view of the overwhelming proof of guilt against the defendant *(see, People v Crimmins,* 36 NY2d 230). While the complainant's identification of the defendant was less than absolute, the defendant did confess to being involved in the conspiracy to kidnap the complainant and to burglarize his jewelry store. Moreover, the defendant admitted that he had arranged for the motel room and that he was present at the train station when the complainant first observed him. Although the defendant claimed that he left the motel before the "trouble started", the issue of whether the defendant in fact remained at the motel was an issue of fact for the jury to determine. Based on our review of the record, we find no basis upon which to disturb the jury's determination *(see,* CPL 470.15 [5]; *People v Gaimari,* 176 NY 84, 94; *People v Garafolo,* 44 AD2d 86, 88). In light of this strong evidence of guilt against the defendant, we conclude that there is no reasonable possibility that the defendant would have been acquitted but for the erroneous evidentiary ruling.

We have examined the defendant's remaining contentions and find them to be without merit. Mollen, P. J., Rubin, Kooper and Sullivan, JJ., concur.