OPINION OF THE COURT
John A.K. Bradley, J.
The defendants, Robert E. Bates, E. Douglas Kenna, III, Kenneth Correll and William B. Clark (the defendants),[1] have moved for discovery and inspection of the Grand Jury minutes and dismissal of the indictment. Alternatively, they seek a further bill of particulars and discovery.
This case arises out of the New York City Universal Water Metering Program.
*689 In 1986, although the installation of individual water meters was required in commercial and industrial buildings, 630,000 one- and two-family homes were unmetered and billed for water on an arcane basis unrelated to usage and predicated on property frontage. The City decided to meter these homes and to do so through a municipal installation project rather than by requiring the individual homeowners to install them. The City would use a competitive bidding process, and award contracts according to the boundaries of the City’s community boards. As is common in such contract bidding processes, the City prepared bid packages for prospective bidders. In addition to technical information and cost estimates, the bid package informed prospective bidders that they would be required to calculate labor costs in accordance with Labor Law § 220, which requires contractors performing public works projects to pay the workers the prevailing wage. The bid packages let out in 1989 and 1990 also required that the contracting party would have to perform certain work known as preplumbing work. The bid package indicated in this regard: "[preplumbing work was] governed by the New York City Building Code including but not limited to Title 27-126, which defines the role of licensed master plumbers. Strict compliance with this section will be rigidly enforced and failure to comply will result in default of contract procedures being instituted.” In essence, the contracts with the City would require that preplumbing work be supervised by a licensed master plumber.
After conducting prebid conferences, the City circulated an addendum to the bid specifications which set forth the specific wages that the bidders would be required to pay their employees. The defendants received this addendum. After the bids were publicly opened, the lowest bid was determined and the contracts were awarded to the defendants. The defendants executed formal contracts, to which were annexed the bid information and the wage schedules, which were also incorporated by reference.
Each contract provided: "The wages to be paid and the supplements to be provided, for a legal day’s work, to laborers, workmen or mechanics employed by the Contractor shall not be less than the prevailing wages and supplement required to be paid to such employees, as ascertained and prescribed by the Comptroller in the Specifications attached hereto.” The annexed appendix then specified exactly how much Vanguard was to pay each category of its workers per hour. Through *690 1990, Vanguard had won approximately two thirds of the 37 contracts awarded.
The indictment charges larceny by false promise, larceny by false pretenses, scheme to defraud, filing of a false instrument, conspiracy, and perjury. The thrust of the indictment is that the defendants never intended to comply with the prevailing wage and preplumbing master plumber requirements. Among other evidence which was presented to the Grand Jury was that the defendants calculated their bids based on piecework rather than hourly costs, that they promised workers the higher of piecework or hourly rate, but only paid a piecework rate that resulted in a lower wage than an hourly rate at the prevailing wages, that the defendants arranged with a licensed plumber to falsely make it appear that a licensed plumber was supervising preplumbing work, and that the defendants submitted false and perjurious forms to the City certifying they had complied with the contracts.
SCHEME TO DEFRAUD
In count 2, the defendants are charged with the crime of scheme to defraud in the first degree (Penal Law § 190.65). Specifically, the defendants are charged with engaging in a scheme constituting a systematic ongoing course of conduct with intent to defraud 10 or more persons by false and fraudulent pretenses, representations, and promises, to wit, soliciting meter installers by promising they would be paid at an hourly wage, and so obtained property from one or more of such persons. In response to a request for a bill of particulars, the People assert that the "property” obtained from the installers by means of the alleged scheme was "money, labor and the right to be paid the prevailing wage”.
The defendants argue that they obtained nothing from the installers, and certainly not "property”. Also, they claim that if they did obtain property, it was not by deception. The People respond that the defendants cheated their workers by advertising a high hourly wage. Then the installers were promised the higher of the prevailing hourly wage or of a piecework rate. Only when they began to work and received their first paychecks did the installers realize that they were only being paid piecework for meters actually installed. This rate of pay was considerably less than the prevailing hourly wage, because, although the pay at piece rates for installing *691 one meter was more than the pay for one hour at the prevailing hourly wage, it usually took an installer several hours to install a meter, but the defendants falsified the records to show that only one hour was spent to install each meter. The People further contend that the defendants employed deceptive methods to keep their labor costs down. The People urge that defendants benefitted: (1) by receiving many hours of uncompensated work from the installers; (2) by withholding wages earned by the installers and to which they were entitled by statute and by contract; and (3) by depriving the installers of their statutory and contractual right to be paid at the prevailing wage for every hour they worked.
The essence of the defendants’ argument that property was not taken from the installers is that the installers’ labor cannot be considered property, and that the installers’ right to be paid the prevailing wage created no more than a debtor/ creditor relationship between the defendants and the installers, which could not be the basis for a larceny prosecution.
The principal basis for the defendants’ suggestion that labor cannot constitute property for purposes of the scheme to defraud statute is that the larceny statute excludes labor from the definition of property which can be stolen. (See, Penal Law § 155.00 [1], [8].)
As the People point out, however, the scheme to defraud statute was enacted in part to permit prosecution of conduct which skirted the larceny statute. Further, the definition of property is not limited to the definition under the larceny statute. The court agrees with the People that the definition of property for purposes of the crime of scheme to defraud is broad enough to encompass the services provided by the installers. (See, Penal Law § 195.20; People v Tansey, 156 Misc 2d 233 [Sup Ct 1992] [services are property for purposes of the crime of defrauding the government].)
As to the defendant’s suggestion that the installers were not deceived, sufficient evidence was presented to the Grand Jury to the effect that the installers were deceived by the defendants’ words and conduct, including alleged misleading advertisements, and misstatements to trainees and installers. The sum total of this conduct constitutes a pattern of behavior calculated to deceive persons of ordinary prudence and comprehension. (People v Block & Kleaver, 103 Misc 2d 758, 764 [Monroe County 1980].)
Accordingly, the motion to dismiss count 2 is denied.
*692 LARCENY BY FALSE PROMISE
The defendants attack the sufficiency of counts 3 to 14 on many grounds, including whether they may properly be charged with stealing the government contracts they entered into. Specifically, these counts alleged that the defendants committed grand larceny by stealing from the City 12 contracts for the installation of water meters. Each larceny allegedly occurred when the City executed the contract. Specifically, larceny by false promise is alleged in that when defendants signed the contracts, they did not intend to keep their covenant to comply with section 7.5 of each contract (pertaining to the methodology of paying wages) and section 10.3 (requiring the use of master plumbers to supervise certain preplumbing work under the contracts).
Larceny by false promise is committed when a person "pursuant to a scheme to defraud * * * obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct * * * when he does not intend to engage in such conduct.” (Penal Law § 155.05 [2] [d].) The law recognizes the dangers inherent in the loose application or unbridled expansion of this criminal statute: "There is a very real danger that ordinary business transactions might be inhibited due to the risk of prosecuting one who is guilty of nothing more than a mere failure to pay his debts or an inability to perform contractual obligations.” (People v Churchill, 47 NY2d 151, 157 [1979]; see, Briefstein v Rotondo Constr. Co., 8 AD2d 349, 351 [1st Dept 1959].) In order to avoid prosecuting mere civil wrongs, larceny by false promise requires evidence "wholly inconsistent” with innocent intent, which excludes to a moral certainty every hypothesis except the intention not to perform. (Penal Law § 155.05 [2] [d].) Guilty intent cannot be inferred from the mere failure to perform, when viewed in retrospect, but rather must be established by independent evidence.
The concerns expressed by the Court of Appeals in Churchill (supra) loom even larger here, where the People seek to apply the statute not to the property obtained pursuant to the alleged promise, but rather to define such property as the very contractual act itself; and to do so in a context in which the People concede the primary consideration in the contract (e.g., the installation of water meters) was performed by the alleged wrongdoer.
*693 In order to apply the larceny statute to the contracts here, the contracts must be "property” within the meaning of the larceny statute. Penal Law § 155.00 (1) defines property as: "any money, personal property, real property, computer data, computer program, thing in action, evidence of debt or contract, or any article, substance or thing of value, including any gas, steam, water or electricity, which is provided for a charge or compensation.”
The obvious starting point for analysis is the fact that Penal Law § 155.00 (1) explicitly refers to "evidence of * * * contract”. It also refers, however, to evidence of debt, and there is no suggestion that a debt per se is property capable of being stolen. Rather, the courts have held that this statutory reference pertains to the promissory note itself or other physical evidence of indebtedness, and the reference to evidence of contract refers as well to the spiriting off of the actual physical contract document itself. (See, People v Deinhardt, 179 App Div 228, appeal dismissed 226 NY 632; People v Jenkins, 61 AD2d 705 [2d Dept 1978].) Obtaining possession of such documents, among other things, makes proof of the debt or contract more difficult for the contracting party.
Putting aside the issue of actual physical embodiment of the contractual relationship, concluding that one may actually "steal” a necessarily inchoate contract to which one is a party is a much more difficult task. A contract is nothing more than a bundle of rights which the law will presumptively confer upon two parties who complete the rituals required for "formation” of a contract. In its simplest form, it requires an offer by one party, an acceptance of the offered terms by the other party without material deviation, and the passage of "consideration” from each to the other, which consideration ordinarily consists of either tangible value (e.g., payment of money) or a promise of performance (e.g., to install water meters). The parties to a contract exist in a commercial form of symbiotic relationship. The "contract” does not exist independent of that relationship. Viewed in this context, the court must conclude that a party to a contract (or, in the case of a corporate entity, its contracting officers) cannot steal that contract. (See, People v Deinhardt, supra.)
The cases cited by the People to contradict this conclusion are in fact inapposite because they do not involve the allegation that the defendant stole a contract, to which only he and another were parties, through false promises during the con *694 tract formation process. Thus in People v Forde (153 AD2d 466 [1st Dept 1990]), the Court concluded that a union business agent, who received kickbacks in exchange for not enforcing a union collective bargaining agreement, could be guilty of stealing the contractual rights of union members. In Forde, the contract and its rights were formed: it was between the union members and the contractor. The activities of the defendant were alleged to have deprived these union members of their fully formed and vested contractual consideration from the contractor.
Similarly, in People v Spatarella (34 NY2d 157 [1974]), the defendant was accused of making threats against a business rival to cancel a contract with a customer so that defendant could himself obtain the same contract with the customer. Notwithstanding the at-will nature of the "victim’s” contract with the customer, unless and until it was cancelled, there was a fully formed contractual relationship between the victim and the customer, and defendant’s conduct stole that contract and appropriated it for himself. (See also, People v Garland, 69 NY2d 144 [1987] [defendant could steal the rights of tenants, under leases with their landlord, to occupy apartments].)
The motion to dismiss counts 3 to 14 is granted.
LARCENY BY FALSE PRETENSE
The defendants next challenge counts 15 to 173, which charge larceny by false pretense, as also going beyond the scope and intent of the larceny statute. Penal Law § 155.05 (2) (a) provides:
"Larceny includes a wrongful taking, obtaining or withholding of another’s property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:
"(a) By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses.”
Larceny by false pretenses requires criminal intent to deprive and defraud the owner of property, the making of a material false representation about an existing fact, obtaining the property of another, and reliance upon the representation to the point that the victim is induced to give the property to the defendant. (See, People v Rosenstein, 92 Misc 2d 1069.)
In the counts at issue, the alleged victim is the City of New *695 York, and the property alleged to be stolen is the full amount of each check paid to Vanguard under the 12 installation contracts. Representations to the City that Vanguard had paid its meter installers the prevailing wage as required by the contract, and that preplumbing work had been performed under the supervision of a master plumber are alleged to be false.
The defendants challenge these counts on various grounds. Pointing out that the meters were installed, they challenge the allegations that the entire payment under the contract was "stolen”. Closely related to this argument is their assertion that one who performs a contract but makes certain misrepresentations collateral to the essence of the contract cannot be charged with stealing the consideration received from the other contracting party.
It is indeed well settled that fraud that does not go to the basis of the bargain between the two parties cannot be the basis for criminal prosecution. (See, United States v Starr, 816 F2d 94; United States v Regent Off. Supply Co., 421 F2d 1174; see, People v Kirk, 62 Misc 2d 1078.) The People do not attempt to respond to this line of authority, but merely argue that had they known the true facts as to Vanguard’s conduct with respect to prevailing wages and plumber supervision, they would not have paid Vanguard at all. This is, however, frequently the posture of a party that has received most of what it bargained for in a contract; such posture usually differs significantly from the final resolution of the controversy. While the People cite various cases to the effect that when a municipal contract has been induced by fraud, the municipality may refuse civilly to pay the consideration, these cases are inapposite.
While ordinary rules of quantum meruit may be altered somewhat in the civil context when dealing with municipal contracts, more serious concerns are raised when the People seek to charge the contractor with theft. To adopt the People’s theory would mean that any time a party contracted with the City, delivered the essence of the performance promised at a price which is in no way inflated, but did not perform strictly in accordance with the methodology agreed upon, that contractor would be guilty of stealing the entire contract price. Again the court declines to adopt such an expansive reading of the larceny statute. Indeed, to do so would constitute a dangerous expansion of the larceny statute. (See, People v Powell, 22 AD2d 959.)
*696 The motion to dismiss counts 15 to 173 is granted.[2]
FALSE INSTRUMENT
The defendants are charged in 21 counts with offering a false instrument for filing in the first degree. Each count is tied to one of the installation contracts and alleges either that the defendants filed a false Labor Law § 220-a certificate, certifying that the defendants had complied with the wage provisions of Labor Law § 220, or that the defendants had filed lists of addresses where preplumbing work was performed which wrongly stated that the preplumbing work had been performed by licensed master plumbers. Penal Law § 175.35 provides: "A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision thereof, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.”
The defendants do not deny they submitted the section 220-a certificates as part of the process of obtaining their progress payments or that the certificates certified compliance with Labor Law § 220. Nor do they suggest that such certification was not false. They merely suggest that a review of the Grand Jury minutes would show that the minutes do not contain sufficient evidence to allow these charges to proceed for trial, because they assert it would have been difficult to assemble such evidence. The court, however, has reviewed the Grand Jury minutes and has concluded that the standard of evidence that must be presented to that body to justify indictment (prima facie case — see, People v Lancaster, 69 NY2d 20, cert denied 480 US 922) has been satisfied. Sufficient testimony of installers and team leaders was presented to demonstrate that the employees were not paid in the manner certified in the section 220-a certificates.
The defendants further allege that even were the certificates false the evidence does not show that the defendants acted intentionally. However, this claim too is refuted by the Grand Jury minutes.
The defendants’ citation to People v Stuart (123 AD2d 46) is *697 inapposite because it deals with the reversal of a conviction at trial, where the standard of review is more stringent. Also, the People had offered no more than the mere incorrectness of the reports filed and, at trial, the defendant had offered potent evidence providing an innocent explanation for such discrepancy. Here too, at trial, defendants will be provided an opportunity to explain the alleged falsity of the section 220-a certificates. (See also, People v Pasquino, 56 AD2d 896, where the witness who testified as to the falsity of the instruments filed could testify only indirectly as to falsity.) Nor is this case analogous to People v Enfeld (136 Misc 2d 252), in which the conviction, for offering a false instrument for filing, of an unlicensed attorney who filed court papers representing herself as an attorney was reversed. The court opined that while it may have been her intention to defraud her clients, she had no conscious aim to defraud the government. Here, the filing of the certificates at issue was a requirement of the contract with the City and by statute, and the alleged falsity goes to the heart of the document filed. It was appropriate for the Grand Jury to make the inference it did.
The evidence before the Grand Jury similarly sustains the counts (counts 180, 183, 186, 189, 192, 195, 198, 201 and 206) relating to certifications that the defendants had complied with the requirement that all preplumbing work be supervised by a master plumber. The defendants contend that the level of supervision provided by Vanguard’s licensed master plumber was sufficient. This assertion is refuted by the Grand Jury minutes. In fact, there was no supervision at all. The master plumber simply lent the use of his seal while having no other involvement, directly or indirectly, in the preplumbing work.
Finally, the defendants argue that the City suffered no pecuniary loss as a result of these filings. However, the statutes require no such proof, merely that legitimate government interests and processes be frustrated by the false filing. Here, the City’s reason for requiring such filings was to ensure its interest in having the prevailing wage paid and proper plumbing supervision, and the filings frustrated such government interests. (See, People v Kase, 76 AD2d 532 [1st Dept 1980], affd 53 NY2d 989.)
Accordingly, the motion to dismiss these 21 counts is denied.
PERJURY
The defendants next challenge the perjury counts. The *698 defendants are accused of submitting false sworn certificates under Labor Law § 220. The defendants first argue that the section 220-a certificates were not false because the certificates said that the defendants had complied with Labor Law § 220, including payment of the prevailing wage. They argue that the People in their response to the demand for a bill of particulars assert that the employees were paid on a piecework basis rather than an hourly wage. Defendants contend that payment on a piecework basis is not prohibited. While this is correct, such payments must equal or exceed payments calculated at the prevailing wage for the number of hours worked. The People contend, and the evidence before the Grand Jury shows, that the piecework payments to the installers were substantially less than the prevailing hourly wages the defendants were required to pay.
The defendants next argue that unless the notary public before whom the certificates were sworn testified before the Grand Jury, there was insufficient evidence of the oath necessary to form the underpinning of a perjury charge. However, courts have held that a jurat and signature of the notary are prima facie evidence that the oath was administered. (People v Campbell, 48 Misc 2d 144.) None of the cases cited by the defendants counters this authority, dealing instead with issues of fact raised at trial when actual evidence was introduced challenging the notarization.
Finally, the evidence before the Grand Jury was sufficient to establish the certificates were materially false, and were intended to deceive the City of New York.
The motion to dismiss counts 175, 177, 179, 182, 185, 188, 191, 194, 197, 200, 203 and 205 is denied.
EXCLUSIVITY OF THE LABOR LAW PROVISIONS
The defendants next allege that the People may not prosecute the claims of scheme to defraud predicated on failure to pay the prevailing wage because the criminal penalties under the Labor Law’s prevailing wage statute are purportedly the exclusive remedy available for failure to pay the prevailing wage. The defendants discuss at length the criminal penalties available under the Labor Law for failure to pay the prevailing wage. The People cite the general rule that "[ujnless there is evidence of legislative intent to the contrary * * * the existence of a specific statute prohibiting the conduct involved, does not prevent prosecution under a more *699 general statute”. (People v Eboli, 34 NY2d 281, 287 [citation omitted] [1974].) The remedy is exclusive only when there is specific evidence of legislative intent to that effect. (Matter of Thomas RR., 64 NY2d 1062 [1985].)
The defendants do not dispute this general principle, but they cite People v Valenza (60 NY2d 363) for the proposition that prosecutorial discretion to choose among criminal statutes may be limited by a legislative intention to make one statute the exclusive remedy. In Valenza, the Court of Appeals held that where the Tax Law set forth an integrated scheme to punish certain conduct, the People could not punish such conduct under the seemingly applicable larceny statute. The People point out in response that in Valenza the Legislature established a scheme to regulate a specific class of conduct through civil rather than criminal penalties; thus it was held to be inappropriate to prosecute the defendant under the Penal Law. In contrast, the People cite People v Walsh (67 NY2d 747), in which the defendant filed false sales and use tax returns. In this situation, the Court found that the Tax Law provided for criminal penalties for this conduct and that (at 749): "There being no legislative intent to exclude criminal sanctions for the latter activity, the general rule that a prosecution may be obtained under any penal statute proscribing certain conduct, notwithstanding that the penal statute overlaps with a more specific statute, applies in this situation.”
The court finds no specific indication that the Legislature intended the Labor Law to provide the exclusive criminal penalties for conduct within its ambit. That portion of the motion based on exclusivity of prosecution under the Labor Law is therefore denied.
ERISA PREEMPTION AND CONSTITUTIONALITY
Defendants next argue that all of the Penal Law counts which are predicated upon the failure to pay the prevailing wage under section 220 of the Labor Law are preempted by section 541 (a) of the Federal Employee Retirement Income Security Act of 1974 (ERISA) (29 USC § 1001 et seq.) statute, which provides that ERISA supersedes and preempts all State laws insofar as they "relate to” any employee benefit plan covered by ERISA.
The defendants argue that courts have held that section 220 of the Labor Law is preempted by ERISA and that these *700 counts must be dismissed. (General Elec. Co. v New York State Dept. of Labor, 891 F2d 25 [2d Cir 1989], cert denied 496 US 912.) This is not correct for two reasons. First, ERISA only preempts those laws in the area in which it legislates. The court in General Elec, made clear that preemption applied to "that portion of 220 dealing with 'supplements’ ”. (Supra, at 26.)
Secondly, ERISA (29 USC §1144 [b] [4]) provides that preemption does not apply to "any generally applicable criminal law of a State”. There is no dispute that prosecutions under the Penal Law are prosecutions under generally applicable New York criminal laws. Moreover, the fact that misrepresentations as to compliance with section 220 of the Labor Law may form part of the predicate for such Penal Law violations cannot convert those criminal statutes into prohibited laws aimed specifically at benefit plans, like those invalidated in People v Art Steel Co. (133 Misc 2d 1001).
The defendants next argue that the prevailing wage statutes are unconstitutional because they require the Comptroller, without discretion, to select prevailing wages from collective bargaining agreements. The argument is that this statutory scheme improperly delegates the legislative process to private parties. This argument is ill-founded. First, the statute grants the Comptroller discretion to select the rates, and the Comptroller did make findings and set the rates. The defendants’ citation to dicta in the United States Court of Appeals for the Second Circuit decision, General Elec. Co. v New York State Dept. of Labor (698 F Supp 1093 [SD NY 1988], vacated, remanded 891 F2d 25 [2d Cir 1989], cert denied 496 US 912 [1990], on remand 742 F Supp 80 [SD NY 1990], affd in part, revd in part 936 F2d 1448 [2d Cir 1991]), to argue that the statute required the Comptroller to rely exclusively on the exact directives of the collective bargaining agreements, is misplaced. In General Elec., the court found a sufficient issue of fact as to collusive negotiation of the collective bargaining agreements to justify discovery. Here, there is no allegation of collusive negotiation of collective bargaining agreements. Indeed, as the People point out, Vanguard itself negotiated rates equivalent to that designated the prevailing wage. Finally, the court concludes that the statute’s definition of "locality” is not impermissibly vague.
INSPECTION AND DISCOVERY
In addition to the arguments discussed above, the defendants have requested the court to review the Grand Jury *701 minutes to ensure that the proceedings were properly conducted. The defendants move to dismiss the indictment for insufficiency of evidence before the Grand Jury, failure to properly instruct the Grand Jury, and failure to present exculpatory evidence. They ask the court to review the instructions on the law, compliance with quorum and voting requirements and other potential irregularities. They also ask for release of the Grand Jury minutes.
The defendants allege that the People did not present evidence to the Grand Jury that certain employees received payment in excess of the prevailing wage, that this testimony constitutes Brady (Brady v Maryland, 373 US 83) material, and the People were obligated to present such evidence. Both installers and "team leaders” testified about their compensation before the Grand Jury.
The Grand Jury process is not an adversary proceeding (see, People v Lancaster, 69 NY2d 20, cert denied 480 US 922, supra), and it is the proper purpose of an indictment to reflect a prima facie case which, if unexplained, would justify a conviction. (Supra.) The People do not have the same obligations at the Grand Jury phase as they have at the trial phase. (Supra.) The court has read the Grand Jury minutes and finds that the presentation was fair, the evidence was sufficient and the instructions on the law were proper. The defendants make various allegations of claimed improprieties committed by and before the Grand Jury. However, the defendants have presented nothing but speculation to support their claims. Not only are the Grand Jury proceedings presumed to be regular but a reading of the Grand Jury minutes shows that due care was exercised in maintaining a proper presentation. The defendants’ request for the court to release the Grand Jury minutes for their review is denied.
The defendants move for discovery and a bill of particulars. Much of the material the defense has requested is trial evidence, work product or Rosario material. The People have adequately responded to the defendants’ requests.
The court directs that a month before the trial date the People produce all Rosario material.
The People are reminded of their continuing obligation to supply all Brady material including any exculpatory material relating to wage payments and any cooperation agreements.
*702 CONCLUSION
The motion is granted to the extent that counts 1, 3 to 14 and counts 15 to 173 are dismissed. The motion is otherwise denied.

. An additional defendant, Vanguard Water Meter Service, Inc., has not made any motions nor joined in this motion. Instead, counsel for Vanguard, in a letter to the court and orally prior to the oral argument of the motion, informed the court that in its "view any insufficiency in the indictment that is the subject of motions filed on behalf of the individual defendants must, as a matter of law, also apply with equal force to Vanguard”.

. In light of the dismissal of the larceny counts the conspiracy count (count 1) is dismissed because it is predicated on the larceny counts.