■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ZENEL SEIT, Appellant. [611 NYS2d 875] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Friedmann, J.), rendered July 11, 1991, convicting him of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree, upon jury verdicts, and imposing sentence.

Ordered that the judgment is affirmed.

After his first trial ended in a conviction of criminal possession of a weapon in the third degree and the jury deadlocked on the more serious charges, the defendant was retried and convicted of murder in the second degree and criminal possession of a weapon in the second degree. The record of the second trial established that the defendant, who was standing on his front porch, was engaged in a heated verbal dispute with the decedent, who was standing on the sidewalk below. According to the testimony of the decedent's nephew, his friend, and two disinterested eyewitnesses from the neighborhood, the defendant shot the decedent in the face and the decedent fell forward to the ground. The defendant then walked down the steps of his porch and fired three more bullets into the decedent's back, one of which fatally wounded the decedent. Gunpowder residue was detected on two of the decedent's back wounds, indicating that these shots had been fired from within 12 inches of the decedent. When police responded to the scene, the defendant told them that the decedent had brandished a handgun during their argument

and that the defendant had wrestled the gun away from him, accidentally shooting him in the process. At the time of the trial, the defendant admitted that he had lied to the police. However, he and several members of his family testified that the decedent repeatedly reached behind his back during the argument and that the defendant shot him in self-defense because the defendant thought the decedent was armed. Significantly, no witness testified that the decedent actually possessed a gun on that date, and no gun was ever found on the decedent's person or in the vicinity of the shooting.

The defendant contends that the trial court erred in refusing to admit testimony regarding the contents of a "911" telephone call made by his son during the altercation. We disagree. At the first trial, the defendant's son testified without objection that shortly before the shooting, he had dialed 911 and stated that there was someone with a gun at the scene. When the defense counsel attempted to elicit the same testimony at the retrial, the prosecutor raised a hearsay objection, and the court did not permit the defendant's son to state the text of the telephone call. This ruling was proper. Although the defendant claims that the proffered testimony was admissible to prove the state of mind of the defendant's son (i.e., that he believed the decedent was armed), the son's state of mind was totally irrelevant. Rather, it was the *defendant's* state of mind which was at issue during the trial, and the son's statement to the 911 operator was not relevant to or probative of that matter *(see, People v Seiver,* 187 AD2d 683; *People v Emick,* 103 AD2d 643). The decisions upon which the defendant relies to support his contention are inapposite, inasmuch as they involved the admission of statements made by or to the victim or the accused which bore directly on the relevant state of mind issue at trial *(see, e.g., People v Minor,* 69 NY2d 779; *People v Ricco,* 56 NY2d 320; *People v Henderson,* 162 AD2d 1038; *People v Rodwell,* 100 AD2d 772). Accordingly, there was absolutely no valid legal basis for the introduction of this testimony during the direct examination of the defendant's son.

Similarly unavailing is the defendant's contention, with which our dissenting colleague agrees, that the testimony regarding the 911 call should have been admitted as a prior consistent statement to rehabilitate the credibility of the defendant's son after he had been cross-examined. It is well settled that "[a] witness' trial testimony ordinarily may not be bolstered with pretrial statements" *(People v McDaniel,* 81 NY2d 10, 16; *see, People v Davis,* 44 NY2d 269; *People v*

*Richardson,* 127 AD2d 617). However, "if the cross-examiner seeks to impeach the witness by evidence tending to show that his testimony is of recent invention, given under motives of interest or bias, the party calling the witness, in order to rebut that inference, may show that the witness made statements similar to his trial testimony at some earlier time when he was free from the alleged bias" *(People v McClean,* 69 NY2d 426, 428; *see, People v Hall,* 173 AD2d 729; *People v Johnson,* 162 AD2d 471). Here, the prosecutor never expressly or impliedly attacked the testimony of the defendant's son as a recent fabrication; rather, the People's position during cross-examination was that the purported belief of the defendant's son that the decedent was armed was both inaccurate and unreasonable from the very beginning of the incident *(see, People v Marcial,* 178 AD2d 493; *People v Laudonio,* 143 AD2d 227; *People v Smith,* 136 AD2d 935; *People v Dillard,* 117 AD2d 817). Contrary to the conclusion of our dissenting colleague, our determination of this issue is not based on the mere failure of the prosecutor to mouth the words "recent fabrication". It is instead premised on the simple fact that the prosecutor never suggested or implied that the son's testimony was recently contrived for the purposes of the trial. Hence, the evidence was properly excluded.

Moreover, we find unpersuasive the defendant's claim, joined in by the dissent, that the prosecutor erroneously informed the court that the testimony concerning the 911 call had been excluded from the first trial. The record clearly demonstrates that the prosecutor never made such a statement. Rather, when the court inquired as to whether the proffered testimony had been admitted at the first trial, the prosecutor merely responded "I don't think so", but expressly left open the possibility that the defendant's former counsel had succeeded in eliciting that evidence at the first trial. Furthermore, there is no merit to the suggestion by the defendant and in the dissent that the defendant enjoyed a vested right to introduce inadmissible evidence at his retrial merely because that evidence was erroneously admitted without objection at his first trial. In any event, even if the exclusion of the evidence could be deemed erroneous, such error would be harmless given the fact that the defendant and three other defense witnesses testified that they believed the decedent had a gun at the time of the shooting. Accordingly, ample evidence of the defendant's alleged state of mind was placed before the jury and rejected. The proffered testimony, even if admissible, merely would have been cumulative *(see,*

*People v Dupigney,* 156 AD2d 709; *People v Martinez,* 154 AD2d 401; *People v Luberoff,* 150 AD2d 802; *People v Felton,* 133 AD2d 232). Moreover, the jury verdict is firmly grounded in the testimony of disinterested eyewitnesses and in forensic evidence which overwhelmingly demonstrated that after shooting the decedent in the face, the defendant fired three additional shots at close range into the back of the prone decedent. We are satisfied that these events proved as fatal to the defendant's claim of justification as they did to the decedent. Thus, we are convinced that the verdict in this case would not have been different if the 911 evidence had been introduced at trial.

The defendant's challenges to certain aspects of the trial court's charge *(see, e.g., People v Rawlings,* 178 AD2d 619) are unpreserved for appellate review *(see, People v Jackson,* 76 NY2d 908; *People v Hernandez,* 190 AD2d 688) and in light of the strength of the prosecution's evidence and the circumstances of this case, we decline to reach those issues in the exercise of our interest of justice jurisdiction. With respect to our dissenting colleague's reliance upon the fact that the jury at the defendant's first trial deadlocked on the murder charge, we note that our function on this appeal is to review the record of the retrial rather than to speculate regarding the deliberative processes of the jurors at the first trial.

The defendant's remaining contentions are either unpreserved for appellate review or without merit. Sullivan, J. P., Pizzuto and Joy, JJ., concur.

Rosenblatt, J., dissents and votes to modify the judgment, to vacate the defendant's conviction of murder in the second degree and criminal possession of a weapon in the second degree, to order a new trial with respect to those counts, to vacate the defendant's sentence for criminal possession of a weapon in the third degree, and to remit the matter to the Supreme Court, Queens County, for resentencing on that count, with the following memorandum: I respectfully dissent. I believe that the court erred in refusing to admit into evidence the contents of the 911 operator call made by the defendant's son, who told the 911 operator that a confrontation with a man was imminent, and that the man had a gun. Because the tape was contemporaneous and supportive of the defendant's claim of justification, the evidence was critical. Moreover, the prosecutor compounded the error by unfairly exploiting the court's ruling.

The importance of the tape cannot be overstated. It spoke directly and compellingly to the pivotal question of whether

the deceased was armed. Indeed, at the first trial, the contents of the tape were revealed to the jury, which was unable to agree on a verdict as to murder in the second degree and criminal possession of a weapon in the second degree.

Although the facts are fairly stated by the majority, it bears emphasis that the defendant's conviction arose out of an incident that occurred in the early evening hours of January 1, 1990, in front of the defendant's home in Queens. On that evening it was the deceased, the defendant's tenant, who arrived at the defendant's home during a family gathering to discuss a rent receipt that the defendant allegedly owed him, and it was the defendant's son, who, at the defendant's behest, called the police in a state of alarm before the shooting took place.

At trial, in light of the justification defense, a primary point of contention was whether the deceased had a gun at the time he confronted the defendant. On the 911 tape, the defendant's son stated "there is someone with a gun," and requested that police "send somebody over immediately". There is no dispute as to the accuracy of the tape's contents; the prosecutor never questioned its authenticity. Although this evidence was admitted in the first trial, the prosecutor, at the second trial, objected to the admission of the 911 taped call, as inadmissible hearsay. The prosecutor—who had himself tried the first case against the defendant—also incorrectly informed the court that the tape was not admitted into evidence at the first trial. The court, after being incorrectly reminded that it had precluded evidence of the tape at the first trial, denied the defendant's application to admit it into evidence in the second trial. Having convinced the court not to allow the tape in evidence, the prosecutor, in cross-examining the defendant's son and in summation, unfairly exploited the court's ruling by attacking the credibility of the defendant's son in order to undermine the son's claim that the deceased had a gun, and, in turn, to repudiate the defendant's claim that the deceased had a gun.

Because the trial centered around the question of justification, and the critical issue of whether the deceased had a gun, persuasive testimony that the deceased was armed would have supported the defendant's claim that he acted out of fear and in the face of threatening, combative gestures.

I find that the court should have admitted the 911 tape into evidence, as the statement made by the defendant's son was a prior consistent statement that predated any motive to falsify (see, People v McDaniel, 81 NY2d 10, 18). Moreover, given the

improper manner in which the Assistant District Attorney attacked the credibility of the defendant's son, I cannot conclude that the error in excluding the tape was harmless. Knowing the contents of the tape and its value as a telling, contemporaneous account of the deceased having been armed, the prosecutor succeeded in keeping it from the jury and was then free to argue, as he did, that the defendant and the defendant's son were lying when they testified that the deceased was armed.

The tape's content is precisely the kind of pre-motive statement that justifies its admission to rebut the claim that the defendant's son was testifying falsely as to the presence of the gun. It is nonetheless so even though the prosecutor refrained from invoking the words "recent fabrication." Were that not so, a prosecutor could defeat the rule by simply and deliberately averting the use of the phrase "recent fabrication." The test, however, is not limited to the labelling, but whether, given the evidentiary setting, the cross-examiner implies that the witness has recently contrived the trial testimony *(see, People v Dobranski,* 89 AD2d 250, 251-252).

Additionally, the court committed clear errors in charging the jury that the court's "non-verbal, facial expressions" were of "maximum importance" *(see, People v Rawlings,* 178 AD2d 619), and in charging the jury that "the law does not require that the District Attorney prove beyond all doubt or half of the doubt" *(see, e.g., People v Bailey,* 121 AD2d 189). Although these errors are unpreserved for appellate review, they contributed to deprive the defendant of a fair trial. In this respect, I disagree with the majority's conclusion that these errors may be disregarded in light of the strength of the People's case. That the proof in this case was less than overwhelming cannot be disputed in light of the hung jury at the conclusion of the defendant's first trial.

Accordingly, I would reverse the defendant's convictions of murder in the second degree and criminal possession of a weapon in the second degree, and remit the matter for resentencing with respect to the criminal possession of a weapon in the third degree count. That was the only charge upon which the defendant was convicted after the first trial. However, as the defendant was sentenced for all three counts at one time, it is unclear from the record whether the court considered the two convictions from the second trial when sentencing the defendant for the criminal possession of a weapon in the third degree. Thus, I would vacate the defendant's sentence for criminal possession of a weapon in the third degree and remit

the matter to the Supreme Court for resentencing on that count *(see, People v Cohen,* 50 NY2d 908, *cert denied* 461 US 930; *People v Stuart,* 123 AD2d 46).*