SUPREME COURT — APPELLATE DIVISION —
SECOND DEPARTMENT.

July 31, 1917.

## THE PEOPLE v. DEINHARDT.

GRAND LARCENY—PLACE OF CRIME.

Where a contract for the exchange of lands induced by fraud was drawn and signed in Queens county, the crime involved in the fraud, if any, was partially committed in Queens county, although the false representations were made in Kings county.

SAME—FRAUD INDUCING CONTRACT TO EXCHANGE LAND NOT LARCENY—PENAL LAW, SEC. 1290.

Where a person was induced to exchange her lands by false representations respecting the value of the premises she was to receive in exchange, and by a false statement that said lands were actually rented for a certain sum per month, the payment of rent being represented by fraudulent receipts, the fraud does not constitute larceny within the meaning of section 1290 of the Penal Law relating to the appropriation through fraudulent representations of a contract or an article of value of any kind.

SAME.

Said statute does not make it an offense to procure a person by fraud to create a thing in action, evidence of debt, or contract for delivery to the wrongdoer, but refers to the larceny of an existing contract.

APPEAL by the defendant, John Deinhardt, from a judgment of the County Court of Queens county, rendered against him on the 30th day of June, 1916, convicting him of the crime of grand larceny in the first degree, and also from an order entered in the office of the clerk of said county on the 13th day of July, 1916, denying his motion for a new trial, and a second order denying his further motion in arrest of judgment.

*Felix Reifschneider, Jr.,* for the appellant.

*James F. Barry (Denis O'Leary, District Attorney,* with him on the brief), for the respondent.

THOMAS, J.:

In a negotiation for the exchange of real properties, the defendant, acting in behalf of a corporation, represented that the rental income of the saloon on the first floor and apartment above was $70 per month. Evidence that the representation was untrue may be found in the testimony of Herweg, the tenant, who testified that he paid no rent, and that he was instructed by Deinhardt, the defendant, to state to a proposed purchaser that his rent was $70 per month, and that he was promised not only free rent, but also the sum of $600 in case the premises were sold, and that he was furnished by Deinhardt with four receipts showing severally the payment of $70 for rent. Deinhardt denied that there was such arrangement. He disclaimed all knowledge of the receipts. He testified that the entire property rented for some $115 per month. His attempt to state in detail how Herweg paid his rent was such that the jury could infer from it that $70 per month was not paid by Herweg. That furnished some corroboration of Herweg. The receipts were not proven to be related to Deinhardt, and the evidence is that they were not shown to Mrs. Fuchs until after she bought the property. Mrs. Fuchs would not make the exchange unless Herweg would agree in writing to take a lease. But that was her own proposition, and although Deinhardt assented to it, I do not perceive that it furnishes corroboration of Herweg's story. Mrs. Fuchs' property is in New York county; that received in exchange is in Queens county. The representations were made in Kings county, but the contract was drawn in Queens county by Deinhardt's son, and signed by Mrs. Fuchs in that county. The tenant's agreement, which was the condition of the exchange on the part of Mrs. Fuchs, was executed in Queens county. Deinhardt also had arranged that Herweg, the tenant located on the property in Queens county, should hold himself out to a purchaser as a genuine tenant, which he was not. So far as appears, Herweg did nothing save

to sign the agreement for a lease, but he was presented to the purchaser as a paying tenant and had, and was intended to have, the semblance of a tenant so as to mislead the purchaser. That was a part of the fraud practiced. In those several phases of the transaction, it may be said the crime was partly commited in Queens county. (Code Crim. Proc., § 134; People v. Peckens, 153 N. Y. 576, 12 N. Y. Crim. 433.) Do the facts show a larceny within section 1290 of the Penal Law? The indictment in effect charges that Deinhardt and Herweg obtained from Mrs. Fuchs a deed, the title and possession of her land, by false and fraudulent representations respecting the value of the premises in Queens county, and that Herweg was paying $70 per month for a portion of it, and by aid of fraudulent receipts for such rent, and that Mrs. Fuchs, induced by the representations, executed the contract for the conveyance of her property, and pursuant thereto did execute a deed thereof. The final charge, that the defendant stole Mrs. Fuchs' property, is made as a result and characterization of the defendant's conduct, and of course is an impossible offense. The defendant, aided by Herweg, did precisely what the indictment charged. Mrs. Fuchs contracted to sell and to convey her real estate to another, and in fulfillment of that contract did convey it. She was induced to it by false and fraudulent representations as to the tenancy of Herweg and the rent paid by him. They were false representations made in words by Deinhardt and given an appearance of reality by Herweg's occupation of the premises as a genuine tenant, for which he had lent aid to Deinhardt's scheme. The appellant instances authorities that such a transaction is not a crime, and in them is much learned discussion that it was not a crime at common law nor under the statutes severally considered. (State v. Klinkenberg, 76 Wash. 466; State v. Eno, 131 Iowa, 619, 621; People v. Cummings, 114 Cal. 437; State v. Burrows, 33 N. C. 477.) However, the statutes there under discussion, and which were decided to

leave the law unchanged, were not in terms the same as that under which the present indictment is laid,. although in one instance it was equally broad. They dealt with statutes denouncing the obtainment of property by fraud, and the property was construed to refer to personal property. But section 1290 of the Penal Law declares that larceny among other things covers the appropriation through fraudulent representations, of money, personal property, thing in action, evidence of debt or contract, or article of value of any kind. In the action at bar there is a contract. The defendant procured the making and delivery of it by fraud, and if the statute *includes the procurement of the execution and delivery of a contract by fraud,* I perceive no reason for excluding a contract for the sale of land. One cannot steal land, but he can by fraud induce the owner to agree to sell it and accordingly to convey it. But section 1290, in the inclusion of the word " contract " in the enumeration, refers to an already existing contract, which a party can take and bear away, stealing it as he could any other portable thing, or the possession of which he obtains by the fraudulent means indicated in the statute. He can so steal or obtain money, personal property, evidence of debt or contract, or article of value, or a thing in action, like a coupon, etc. But the statute, I regret to say, does not mean that it is an offense to procure by fraud a person to create a thing in action, evidence of debt, or contract, for delivery to the wrongdoer. In my judgment, that should be within the statute, but I do not so read it. Section 39 of the General Construction Law (Consol. Laws, chap. 22; Laws of 1909, chap. 27) defines personal property to include chattels, money, things in action and " written instruments themselves, as distinguished from the rights or interests to which they relate, by which any right, interest, lien or incumbrance in, to or upon property, or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated,

wholly or in part, and everything, except real property, which may be the subject of ownership." Personal property as so defined covers every term enumerated in section 1290 of the Penal Law. It may be suggested that it would be sufficient to use the term " personal property " in section 1290 and that the inclusion of other terms, like contract, meant to give them a significance beyond that expressed by the words " personal property." For the purpose of exact nomenclature, the use of several terms in addition to the generic term is a matter of comment, may be criticism, but statutes err in that regard for the purpose of making immediately and definitely clear the breadth of the enactment. A person could obtain possession of a horse by false representations, or a note or a contract existing. But a contract to be executed and delivered by A and B is not a contract until it is delivered to B, or delivery be otherwise effected. How, then, could A by fraud take an undelivered contract from B's possession? The statute treats of taking by force, by stealth, or by fraud, the possession of the property. A person could so take and appropriate a chattel, or instrument, but he could not so take possession of a contract that had to be made and delivered. If a transfer of personal property were procured by fraud, the indictment would lie for so obtaining possession of personal property, and the statute would cover the article, or the contract. But the person would not be punished for procuring the making of a transfer, for instance a bill of sale. The respondent says that the case is covered by People v. Peckens (153 N. Y. 576, 12 N. Y. Crim. 433). And so it is. But the present question was not raised, nor was the statute under discussion. The question, then, is whether due regard for that decision demands that what was ignored or unnoticed in it should be deemed as considered and decided by it. I am inclined to the conclusion that due respect does not require that the decision, silent on the subject, shall be regarded as presenting and deciding what is here involved.

I advise reversal of the judgment of conviction of the County Court of Queens county, and orders, and that the indictment be dismissed.

JENKS, P. J., STAPLETON, MILLS and RICH, JJ., concurred.

Judgment of conviction of the County Court of Queens county and orders reversed, and indictment dismissed.