[924 NE2d 792, 897 NYS2d 684]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TATYANA KISINA, Appellant.

Argued January 14, 2010; decided February 18, 2010

**POINTS OF COUNSEL**

*Stillman, Friedman & Shechtman, P.C.*, New York City (*Nathaniel Z. Marmur* and *Paul Shechtman* of counsel), for appellant. I. The convictions on the falsifying business records counts should be set aside because Dr. Kisina's reports are not records of State Farm Mutual Automobile Insurance Company. (*People v Mahboubian,* 74 NY2d 174; *People v Mezon,* 80 NY2d 155; *People v Hawkins,* 11 NY3d 484; *People v Ford,* 11 NY3d 875; *People v Jean-Baptiste,* 11 NY3d 539; *People v Papatonis,* 243 AD2d 898; *People v Argus,* 17 AD3d 1155; *Hall v Brown,* 489 F Supp 2d 166; *People v Smithtown Gen. Hosp.,* 93 Misc 2d 736; *People v Banks,* 150 Misc 2d 14.) II. The trial court erred in excluding testimony that Dr. Kisina had treated the undercover officer properly. (*Crane v Kentucky,* 476 US 683; *People v Alvino,* 71 NY2d 233; *Matter of Brandon,* 55 NY2d 206; *Sattler v City of New York Commn. on Human Rights,* 147 Misc 2d 189; *United States v Shavin,* 287 F2d 647; *United States v Thomas,* 32 F3d 418.)

*Andrew M. Cuomo, Attorney General,* New York City (*Hannah Stith Long, Barbara D. Underwood* and *Roseann B. MacKechnie* of counsel), for respondent. I. A person commits the crime of falsifying business records where she provides an insurance company with false information in support of a fraudulent claim, and the company keeps the information to evidence its legal obligation to pay her. (*People v Hawkins,* 11 NY3d 484; *People v Gray,* 86 NY2d 10; *People v Mahboubian,* 74 NY2d 174; *Consedine v Portville Cent. School Dist.,* 12 NY3d 286; *Matter of Greenberg [Ryder Truck Rental],* 70 NY2d 573; *People v Brown,* 140 App Div 591; *People ex rel. Isaacson v Fallon,* 202 NY 456; *People v Bloomfield,* 6 NY3d 165; *People v Boothe,* 68 AD3d 402; *People v Myles,* 58 AD3d 889.) II. The trial court properly precluded defendant from presenting evidence that she declined to treat another patient and did not bill for treating him. (*People v Williams,* 6 NY2d 18; *People v Arroyo,* 77 NY2d 947; *United States v Walker,* 191 F3d 326; *Sattler v City of New York Commn. on Human Rights,* 147 Misc 2d 189; *United States v Shavin,* 287 F2d 647; *People v Kuss,* 32 NY2d 436; *People v Van Gaasbeck,* 189 NY 408.)

## OPINION OF THE COURT

Ciparick, J.

The principal question presented in this appeal is whether a physician can be found guilty of falsifying business records in the first degree (Penal Law § 175.10) for submitting fraudulent medical documentation to a no-fault insurance carrier for the purpose of receiving payments for treatments that were unnecessary or unperformed. We hold that the submitted documents are "business records" for the purpose of this statute.

In 2002, defendant, a specialist in physical medicine and rehabilitation, treated accident victims at IK Medical P.C., a clinic in Queens. The facility reportedly provided comprehensive medical care to motor vehicle accident victims eligible for no-fault insurance coverage. In 2003, the Attorney General investigated the clinic for insurance fraud and other related crimes, and subsequently procured an indictment against defendant for engaging in a scheme to defraud in the first degree (Penal Law § 190.65 [1] [b]), two counts of insurance fraud in the third degree (Penal Law § 176.20) and two

counts of falsifying business records in the first degree.* The falsifying business records charges were based upon false consultation reports that defendant submitted to State Farm Mutual Automobile Insurance Company (State Farm), along with verification of treatment forms seeking recompense for procedures she purportedly performed on two motor vehicle accident victims.

Supreme Court denied defendant's pretrial motion to dismiss the falsifying business records counts, stating that "[f]alse records resulting from false information submitted to support a fraudulent claim [are] a sufficient basis for an indictment charging Falsifying Business Records."

At trial, the People introduced as evidence two $3,823.24 insurance claims for nerve testing purportedly performed on two accident victims. Defendant signed the claim forms—entitled "New York Motor Vehicle No-Fault Insurance Law Verification of Treatment by Attending Physician"—and submitted them to State Farm. Along with these forms, defendant sent the insurance carrier "consultative reports," indicating that defendant had conducted electrodiagnostic testing on 26 nerves and muscles for each patient.

Defendant stipulated as to testimony from a representative from State Farm that, if called, she would testify that the company is a provider of no-fault insurance in New York, and that she was a custodian of records, familiar with its record-keeping practices and obligations. The stipulation agreement explained that the "Verification of Treatment Forms" and accompanying medical reports defendant submitted to State Farm are intended to evidence its "obligation to pay the attending physician or other provider of health service for treatment or healthcare services rendered," and that State Farm relies on the accuracy of such statements. The stipulation agreement further noted that such documents became part of State Farm's permanent business records.

The People presented an expert witness who described the electrodiagnostic tests for which defendant billed, including electromyography (EMG) and nerve conduction velocity (NCV).

---

* The indictment contained 100 counts, charging the owners of IK Medical, several licensed doctors who reportedly practiced at the clinic, three personal injury lawyers, and a steerer. The charges included engaging in a scheme to defraud in the first degree, attempted grand larceny in the third degree, insurance fraud in the third degree, falsifying business records in the first degree, and other related crimes.

The expert testified that one of the tests involves placing a needle into the muscle and causing pain, and that the "F-wave" test that defendant claimed to have performed on one of the two patients 16 times was not a standard test and is "rarely done."

The two accident victims that defendant allegedly treated testified for the People. One testified that she had not received any of the EMG tests reportedly performed by defendant and only 2 of the 26 NCV tests billed by defendant; the other stated that he received just 2 of 4 EMG tests and just 6 of 26 NCV tests that defendant billed.

In addition to evidence specifically relating to defendant's conduct, the People offered evidence of a pattern of fraud by the clinic in which, they claimed, defendant was involved. Two of the owners of IK Medical testified for the prosecution under cooperation agreements that the clinic existed from 2001 to 2003 for the sole purpose of improperly billing no-fault insurance companies for medical treatment reportedly performed on accident victims. The clinic allegedly recruited motor vehicle accident victims by paying "runners" or "steerers" to locate and usher them to the clinic for treatment. Irrespective of a particular patient's medical needs, the clinic administered treatment from a general practitioner, a neurologist, a psychologist, a physical therapist and other medical professionals, and then billed no-fault insurance carriers. The two owners stated that the clinic sought to exhaust the $50,000 no-fault coverage allotted to each motor vehicle accident victim for medical treatment, even if the patients did not require such extensive care. The owners further noted that defendant worked at the facility from June 2002 until June 2003, for two to three days per month.

Defendant presented three character witnesses, a private investigator who interviewed one of the two patients, and a medical expert of her own. Defendant then requested that the court permit her to present evidence that the Attorney General's Office sent an undercover investigator to the clinic and that defendant provided proper medical treatment and did not inflate her bill for such services. Supreme Court precluded the evidence, stating "[t]here is no requirement that the People prove that defendant's treatment of all of her patients was fraudulent in order to prove this scheme to defraud."

The jury found defendant guilty of two counts of insurance fraud in the third degree and two counts of falsifying business

records in the first degree. The jury acquitted defendant of scheme to defraud in the first degree. The Appellate Division affirmed (60 AD3d 695, 696 [2d Dept 2009]). A Judge of this Court granted defendant leave to appeal (12 NY3d 917 [2009]), and we now affirm.

Defendant primarily contests her conviction of two counts of falsifying business records in the first degree. She raises two arguments that the false business records submitted to State Farm fall outside of the purview of Penal Law § 175.10. First, she claims that the statute is not violated when an outsider or third party submits false information to a company to induce it to take action in reliance upon that information; second, she argues that the medical reports that she submitted to State Farm are not "business records" because they do not reflect the "condition" or "activity" of the recipient enterprise, but rather falsely evidence her activities and the condition of her patients. We disagree.

We begin by turning to the language of the statute in order to "give effect to the intention of the Legislature" (*Consedine v Portville Cent. School Dist.*, 12 NY3d 286, 290 [2009]). "Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (*Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]). Falsifying business records in the first degree is committed when a "person," with the requisite intent, makes or causes a false entry in the "business records" of an enterprise (Penal Law § 175.05 [1]; § 175.10). The "person" must act with an "intent to defraud," which includes "an intent to commit another crime or to aid or conceal the commission thereof" (Penal Law § 175.10; *see also* Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 175.05, at 65-66). A "business record" is "any writing or article . . . kept or maintained by an enterprise for the purpose of evidencing or reflecting its condition or activity" (Penal Law § 175.00 [2]; *cf.* CPLR 4518 [admissibility of business records at trial as an exception to the hearsay rule]).

Regarding defendant's first claim, the Penal Law prescribes no limitation or preconditions on the types of persons who may fall within the ambit of this crime. Nowhere does the Penal Law state that "outsiders" or "third parties" not employed by or agents of the recipient enterprise are immune from prosecution under this statute. Indeed, in *People v Bloomfield* (6 NY3d 165, 170-171 [2006]), we rejected the "insider/outsider distinction"

for the purpose of defining a false business record under the current business record statutes. We sustained a lawyer's conviction for falsifying business records of a company of which he was not an employee or agent, notwithstanding that he maintained the records in an outside location (*cf. People v Cratsley*, 86 NY2d 81, 88-91 [1995] [in a rape prosecution, IQ tests performed by an "outsider" were properly admitted as a business record of a social service agency pursuant to CPLR 4518]).

Many other courts have similarly held that a third party's submission of fraudulent records may fall within the scope of the statute (*see e.g. People v Myles*, 58 AD3d 889, 890-892 [3d Dept 2009] [a consumer of electricity could be guilty of falsifying business records for bypassing the electric meter, causing it to falsely record the amount of electricity used]; *People v Johnson*, 39 AD3d 338, 339 [1st Dept 2007] [a codefendant of public assistance applicant could be guilty of falsifying business records of the agency]; *People v Smith*, 300 AD2d 1145, 1146 [4th Dept 2002] [defendant could be convicted for falsifying the records of the public defender's office for erroneously stating his income]). We agree with the interpretation of these courts, and find that the People's position better comports with the plain language of the statute.

The second and most prominent component of defendant's argument is that the records submitted to State Farm do not reflect the "condition" or "activity" of that enterprise as required by Penal Law § 175.00, but rather falsely evidence defendant's own activity and the condition of her patients. Here, the stipulated testimony from the State Farm representative supports the necessary elements of a "business record." The stipulation explains that State Farm was obligated to keep and maintain records submitted by physicians seeking payments for medical services rendered. Further, the stipulation establishes that State Farm's financial condition is affected by these false submissions, as they give rise to liabilities under its policies.

Defendant seeks support from *People v Papatonis* (243 AD2d 898, 900 [3d Dept 1997]) in arguing that the false medical reports she submitted do not reflect the "condition" of the receiving enterprise. In that case, the court held that misrepresentations on an employment application, wherein the defendant falsely denied having been convicted of a crime, did not fall within the ambit of the statute (*see id.* at 900-901). However, the falsifications in the job application did not, as here, relate to any rights or obligations on the part of the recipient agency.

Here, by contrast, there exists sufficient evidence establishing that State Farm "kept or maintained" the consultation reports along with the claim forms, and that they evidence or reflect "its condition"—specifically its legal obligation to reimburse medical providers for services. The falsifying business records conviction was, therefore, sustainable under the circumstances presented.

Finally, defendant asserts that Supreme Court committed reversible error by improperly precluding evidence that an investigator from the Attorney General's Office went to IK Medical, posing as a motor vehicle accident victim, and that defendant did not administer any unnecessary procedures or submit false claims. At trial, defendant proffered this evidence to negate fraudulent intent. She claims that its preclusion prejudiced her defense.

While this proffered testimony may have been relevant to show a lack of intent to perpetrate the scheme to defraud charge (*see United States v Thomas*, 32 F3d 418, 421 [9th Cir 1994] [a defendant "should be permitted to offer any evidence which bears directly and not too remotely on his intention (to defraud)"]), no possible prejudice is apparent as a result of Supreme Court's ruling. Defendant was acquitted of the scheme to defraud charge, and this evidence would not have related to the fraudulent submission of claims for unnecessary or unperformed medical treatments regarding the two accident victims.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.