OPINION OF THE COURT
Mark Dwyer, J.
Defendant stands charged with grand larceny in the second degree, falsifying business records, conspiracy, and related crimes. The indictment alleges that defendant and the codefendant Jacqueline Jackson fraudulently obtained paid assignments from the New York City Transit Authority (hereinafter NYCTA) to procure independent medical examinations (hereinafter IMEs) of plaintiffs who had sued the NYCTA. Defendant is charged with obtaining the NYCTA vendor assignments for his company by using a fictitious name. The People say he thus concealed the fact that he had also been retained as outside counsel for the NYCTA in the defense of personal injury lawsuits — a circumstance which, the People say, would have disqualified him from being paid to procure medical examinations.
Defendant moved for dismissal of the indictment in its entirety, placing particular emphasis on the insufficiency of the larceny charges. At this court’s request, defense counsel and the prosecutor submitted briefs outlining the issues.
Background
Beginning in 2003, defendant, an attorney, acted as outside counsel for the NYCTA in personal injury lawsuits against the NYCTA. The People allege that defendant and codefendant Jacqueline Jackson, the Director of the Legal Support Unit (hereinafter LSU) at the NYCTA, formed a business, Advance I.M.E. Co. (hereinafter Advance). The indictment alleges that on April 9, 2007, defendant, employing the pseudonym “James Douglas,” submitted a business proposal on behalf of Advance at 80 Broad Street, New York, New York, to codefendant Jackson in her capacity as Director of the LSU. The proposal was approved by Jackson and called for Advance to receive assignments from the LSU to schedule IMEs of plaintiffs who had filed personal injury lawsuits against the NYCTA. In return, Advance would *818 earn a fee of $400 per scheduled IME and IME report.[1] In their memorandum of law in opposition to defendant Headley’s motion to dismiss the indictment, the People add that defendant Headley had a long-standing personal relationship with co-defendant Jackson. According to the indictment, defendant John Headley resided in the Brooklyn residence of Ms. Jackson from August through December 2008.
The overt acts listed under the conspiracy count in the indictment include an allegation that on June 16, 2008, defendant Headley paid Consolidated Edison $242.54 out of Advance’s Bank of America account to satisfy the bill of Jacqueline Cutler, also known as Jacqueline Jackson, residing at 1489 East 46th Street, Brooklyn, NY. There is also an allegation in the list of overt acts that on June 14, 2008, defendant Headley drafted and signed a $676.57 check drawn on Advance’s Bank of America account payable to National Grid for the billing account of Jacqueline Cutler, also known as Jacqueline Jackson, relating to the Jackson residence at 1489 East 46th Street, Brooklyn, NY.[2]
The indictment further alleges, inter alia, the following:
“On April 9, 2007, defendant John E.. Headley, employing the pseudonyum of ‘James Douglas’, submitted a business proposal to defendant Jacqueline Jackson in her capacity as director of the LSU of the New York Transit Authority’s Law Department, on behalf of Advance at 80 Broad Street, New York, New York.
“On April 9, 2007, Advance submitted to the NYCTA a copy of what purported to be a United States Department of Treasury, Internal Revenue Service W-9 form listing Advance at 80 Broad Street, New York, NY, and bearing the fabricated employer identification number of 680647760 and the signature of ‘James Douglas.’
“From April 9, 2007 through May 2008, defendant Jackson directed her staff to give preference to Advance for assignment of IMEs required by the Law Department of the NYCTA in the defense of *819 personal injury law suits handled by that department. More than 200 assignments were made to Advance, pursuant to defendant Jacqueline Jackson’s direction, during that time period.
“On August 10, 2007, a business certificate for Advance bearing the signature of defendant John E. Headley dated August 9, 2007, listing its place of business as 8 East 58th Street, Brooklyn, NY, was filed with the Kings County Clerk’s Office.
“On August 10, 2007, defendant Headley opened a business checking account at Bank of America in the name of ‘DBA Advance I.M.E., Co.,’ located at 80 Broad Street, New York, NY, and he identified himself as the sole proprietor of this account.
“At a meeting held in November 2008 at defendant Jacqueline Jackson’s residence at 1489 East 46th Street, Brooklyn, New York defendant Jacqueline Jackson, in the presence of defendant John E. Headley, invited a witness known to the Grand Jury to join defendants Jacqueline Jackson and John E. Headley in the business of Advance with the NYCTA, but under a new name, in return for a $150 per invoice share of the business.”
The People’s theory is that by misstating a material fact, to wit, his identity as the principal of Advance, defendant acted knowingly and intentionally to defraud the NYCTA, and thus committed larceny by false pretenses. For the payments to Advance for more than 200 IME assignments in 2007 and 2008, defendant is charged with stealing in excess of 50 thousand dollars from the NYCTA — every dollar Advance was paid for its work.
Defendant’s Argument
Defendant Headley argues that the indictment must be dismissed because there was no evidence of intent to defraud the NYCTA or that the NYCTA sustained any pecuniary loss as a result of defendant’s use of a fictitious name. More particularly, defendant contends that the crimes with which he has been charged require that he had the intent to defraud the NYCTA, and that, while his conduct may have been deceptive, there is no evidence that he acted with an intent to “defraud.” Belatedly, defendant asserts that the People have not shown that the NYCTA sustained a loss, a necessary element of larceny. Defendant argues that the basis of his bargain with the NYCTA was for defendant to provide IMEs and reports to the NYCTA *820 for a fee of $400 per examination plus report, that he did precisely that, and that defendant’s concealment of his identity did not have any effect on the bargain. Thus, he argues, Advance provided the NYCTA with the exact product agreed to and defendant was fairly paid in accordance with the agreement.
According to defendant, all of the IME reports for which defendant was paid by the NYCTA were analyzed and certified by NYCTA in-house counsel for accuracy, for sufficiency, and for suitability for exchange with plaintiffs’ counsel. No report was rejected or deemed insufficient, and there has been no allegation that the medical examinations were improperly done.
The Larceny and Conspiracy Counts
Defendant is charged with larceny in 11 counts and with conspiracy to commit larceny in another. Penal Law § 155.05 defines larceny, in pertinent part, as follows:
“1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.
“2. Larceny includes a wrongful taking, obtaining or withholding of another’s property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:
“(a) By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses . . . .”
The elements required to establish larceny by false pretenses are: (1) criminal intent to deprive the owner of property; (2) making a false material representation; (3) obtaining the property of another; and (4) reliance by the victim upon the representation. (See People v Drake, 61 NY2d 359 [1984]; People v Churchill, 47 NY2d 151 [1979].) Put another way, in order to establish larceny by false pretenses, the proof must show that the defendant obtained the property of another by means of an intentional false representation about a prior or existing material fact, upon which representation the victim relied in parting with the property. (See People v Drake, 61 NY2d 359 [1984]; People v Lobel, 298 NY 243 [1948]; People v Vandermuelen, 42 AD3d 667 [3d Dept 2007]; People v Gross, 51 AD2d 191 [4th Dept 1976].)
Charges of larceny by false pretenses not infrequently originate in the context of a contractual relationship between *821 the defendant and the complainant. Courts have struggled with the danger of applying criminal liability to conduct arising out of purely civil breaches of contract. “There is a very real danger that ordinary business transactions might be inhibited due to the risk of prosecuting one who is guilty of nothing more than a mere failure to pay his debts or an inability to perform contractual obligations.” (People v Churchill, 47 NY2d 151, 157 [1979].) “[C]riminal charges of false pretense are often instituted in reality to compel the payment of debt, and are easily fabricated.” (People v Williams, 135 Misc 564, 567 [Cayuga County Ct 1930]; see also People v Lawrence, 102 Misc 2d 32 [Crim Ct, NY County 1979].) “[T]he law does not criminalize every breach of contract, and will only call it a larceny when a party has effectively obtained property by a fraud to the detriment of the other party.” (People v Morris, 28 Misc 3d 1215[A], 2010 NY Slip Op 51331[U], *40 [Sup Ct, NY County 2010].)
The most pivotal inquiry in determining whether larceny occurred in a contractual setting is whether the complainant received the bargained-for benefit. “There would . . . be no taking if the property received was what the alleged victim bargained for.” (People v Morris, 2010 NY Slip Op 51331[U] at *38.) In order for the elements of larceny to be met, there must be a taking. If an owner consents to part with the property in exchange for a received benefit, there is no taking and no larceny.[3]
In the following cases, there was clearly a criminal taking of property. By means of material false representations the defendants appropriated property of the complainants that the complainants had not knowingly consented to part with. The fraud went directly to the basis of the bargain because the complainants were deceived as to what they were actually getting — they paid for something they had bargained for but did not receive.
*822 People v Gross (51 AD2d 191 [4th Dept 1976]) involved a municipal contract where the defendants falsely represented to the town that they had used more expensive material and where they charged the town for that material. The elements of larceny by false pretenses were present: the defendants made false representations upon which the town relied, and in consequence the defendants received property that they were not entitled to. The inducements for the overpayments constituted substantial evidence from which the jury could draw compelling inferences of intent to defraud.
In People v Hudson Val. Constr. Co. (165 App Div 626 [3d Dept 1915]), the defendants, under contract with New York State to build a prison, knowingly submitted false vouchers for work they had not performed. The elements of larceny by false pretenses were met since there were false representations upon which the state relied and the defendants obtained property of greater value than their work justified.
In People v Kirkup (4 NY2d 209 [1958]), the defendants falsely represented to drug companies that they were purchasing drugs for use in the County Home. The drug companies thus sold drugs to them at discount prices offered to public institutions. The defendants sold the drugs elsewhere at a profit to themselves. Because they relied on the defendants’ false representations, the complainants lost the value of the extra amount they would have received had they not sold the drugs at discount. The court concluded that the evidence before the grand jury was sufficient to support obtaining property by false pretenses.
In People v Avino (34 AD3d 1251 [4th Dept 2006]), the evidence was sufficient to establish larceny by false pretenses where the complainant was induced to issue checks in reliance on the defendant’s falsified inspection reports representing that the contracted-for repairs had been made. The false representations went directly to the nature of the bargain.
In People v Cambria (204 AD2d 167, 168 [1st Dept 1994] [citation omitted]),
“[t]he evidence overwhelmingly established that each defendant intentionally made false statements, which misled the Pepsi-Cola Bottling Company into improperly crediting defendants’ corporate account for goods which were never delivered, or goods which were improperly sold by defendants rather than provided to their customers for free, as well as improperly crediting the defendants with commissions for goods which were not delivered.”
*823 In People v Caridi (2006 NY Misc LEXIS 4086 [Sup Ct, Rockland County 2006]), the defendants, a construction firm and its principals, contracted to build a residential building. The Department of Housing and Urban Development (hereinafter HUD) was a signatory to the contract and was obligated to pay the defendants for the construction services. The contract required the defendants to pay workers a specific wage and to submit periodic payroll forms to HUD as proof of compliance. The contract provided that if the appropriate wages were not paid, HUD would withhold payment to the defendants. The defendants altered their payrolls to indicate that the employees were paid the required rates when they had actually been paid much less. The defendants were charged with stealing the specific amount that would have been withheld by HUD had the defendants not falsified the payroll records submitted to HUD. The court held that the People established a prima facie case of grand larceny in the second degree.
People v Drake (61 NY2d 359 [1984]), while not involving a traditional contract situation, likewise illustrates larceny by false pretenses. In that case a state employee falsely reported that he was absent on jury duty on dates that he in fact was not on jury service. Relying on his false statements, the state paid the defendant money in salary that he was not entitled to. With respect to his conviction of grand larceny in the third degree, the Court of Appeals held that the evidence sufficiently established that the defendant wrongfully received funds from his employer because of his false statements.
In the foregoing cases, the defendants falsely represented to the complainants that the defendants had delivered the bargained-for benefit. The defendants obtained the complainants’ money or property, thereby depriving the complainants of property and appropriating it to themselves. In the cases discussed infra, there was no larceny because the complainants received the full benefit of the bargain and there was no evidence the defendants intended to deprive the complainants of property. Courts have repeatedly found that fraudulent misrepresentations that do not go to the essence of the product which is the subject of the contract, though intended to induce a party to enter a contract, do not constitute material misrepresentations. Put differently, if the parties to a contract consent to its terms and there are no conditions outstanding, that is, nothing remaining undone under the contract, there is no larceny even *824 if the complainant was induced to enter the contract by the defendant’s fraudulent misrepresentations. “[The complainant’s] consent to the transfer of the property was full, and without conditions, and in such a case there can be no larceny, although the consent was obtained by fraud.” (Zink v People, 77 NY 114, 130 [1879].)
In People v Morris (2010 NY Slip Op 51331[U]), the court found that there was insufficient evidence to support an indictment for grand larceny where the complainant received the full bargained-for benefit. False representations made by the defendant had no bearing on the complainant’s decision to retain a placement agent that it believed would be instrumental in securing a highly desirable investment. The court termed the false representations no more than an “advisory signal.” The court found that there was insufficient evidence that the complainant relied on the representations in parting with its money.
In People v Henning (42 AD2d 286 [2d Dept 1973]), the general partner in six limited partnerships was charged with larceny by false pretenses for having allegedly made false statements to additional investors that they were replacing original investors. The Appellate Division held that there was no larceny because the investors received precisely what they bargained for, an interest in the partnership in the proportion that their investment bore to the original investment.
In People v Kirk (62 Misc 2d 1078 [Rockland County Ct 1969]), the County of Rockland was induced to enter into an employment contract with defendant based on his false representation that he possessed the requisite degree required by the County for appointment as a commissioner. The court ruled that the County was not deprived of any property as a result of the alleged false and fraudulent representation because the salary was paid to him for services rendered. Once the services were rendered, the money was no longer the property of the County, but belonged to defendant.
It has been held that the assumption of an obligation under a contract cannot be the subject of larceny. (See People v Weisbard, 139 Misc 385, 386 [NY City Magistrates Ct 1931].) In Weisbard, the defendant induced the complainant to sign a lease for a hotel, representing that it was a “respectable” hotel. The complainant relied on that representation, but after the lease was executed discovered the hotel was used for prostitution. The defendant’s misrepresentations induced the complainant to enter into the contract. The court held that the facts did not make out larceny by false pretenses.
*825 “The objective which the defendant sought was the signing of a lease of real property then in existence; such money as was given by the complainant to the defendant was given pursuant to that written agreement, and incidental thereto. The situation might be otherwise if the property were not in existence or if the defendant had no right to lease it to the complainant.” (Weisbard at 386.)
In People v Deinhardt (179 App Div 228 [2d Dept 1917]), complainant and defendant entered into a contract for the exchange of real properties. Defendant made false representations to complainant about the amount of rental income on the property which the defendant was to convey. The complainant was thus induced to enter into the contract by false and fraudulent representations. However, there was no larceny because a person could not “be punished for procuring the making of a transfer.” (Deinhardt at 232.)
In People v Noblett (244 NY 355 [1927]), the defendant, a month-to-month tenant, agreed to sublet his apartment to the complainant. The defendant falsely represented that he owned an eight-year lease that still had two years to run. The complainant paid the agreed rental price in advance, but he never received possession of the apartment. The court found that while the defendant did not have the alleged two years left on the lease, he did have a right to possession beyond the term for which he agreed to give the sublease, and that his alleged false representation was therefore not material. The complainant’s payment was not conditioned on his receiving immediate occupancy of the apartment. The court held that nothing remained undone under the contract which constituted a condition to the right of the defendant to use the money as his own. (Noblett at 362.) Even if the defendant obtained the complainant’s money by fraud, he was not guilty of larceny. “We may not pass upon the defendant’s moral conduct, or even upon the question of whether he may have been guilty of some crime other than common-law larceny. The sole question before us is whether he has been properly convicted of that crime.” (Noblett at 359.)
The defendant in People v Williams (135 Misc 564 [1930]) was charged with obtaining goods by false pretenses. The complainant had sold some merchandise to the defendant in reliance on the defendant’s false representation that he owned a “fatted calf” which he had sold and that he would pay the complainant for the merchandise once he had received payment *826 for the calf. The court held that even if the accusatory instrument could be construed as charging larceny, “it does not allege the intent to deprive or defraud the true owner of his property.” (Williams at 565.) “Not every lie or dishonest or fraudulent act comes within the purview of the criminal law; all moral delinquencies cannot be prevented or punished, and the only safe rule in the administration of criminal justice is to confine its application to those acts which the law expressly condemns.” (Williams at 567.) Clearly defendant’s representation as to how he intended to pay for the merchandise did not go to the essence of the subject of the contract — the goods sold to defendant.
In the more recent case of People v Vanguard Meter Serv. (160 Misc 2d 685, 693 [Sup Ct, NY County 1994]), the city contracted with defendants for the installation of water meters. The installation work was done, but the defendants certified, as part of the process of obtaining their progress payments, that they had complied with contractual provisions, to wit, that they had paid their workers at prevailing wage rates and that pre-plumbing work had been supervised by master plumbers. These representations were false. The workers had actually been paid for piecework, substantially less than had they been paid prevailing hourly wages.
The People’s theory was that the defendants had stolen the entire contract price, rather than any overpayment to the defendants based on the difference between the prevailing wage and the amount actually paid to the workers. The court rejected the People’s theory as a dangerous expansion of the larceny statute. The People “seek to apply the statute not to the property obtained pursuant to the alleged promise, but rather to define such property as the very contractual act itself . . . [where] the People concede [that] the primary consideration . . . was performed.” (Vanguard at 692.) “The parties to a contract . . . cannot steal that contract.” (Id. at 693.)
Interestingly, the facts in People v Caridi (2006 NY Misc LEXIS 4086 [2006]) are similar to those in the Vanguard case. That the courts reached opposite conclusions about whether larceny had been committed does not render the outcomes inconsistent. As noted above, in Caridi the defendants were charged with stealing the difference between what HUD paid the contractors based on their certification that they had paid their workers the required rate and the amount actually paid the workers. In contrast to the Vanguard case, rather than *827 seeking to charge larceny for the full contract price, the People presented evidence to the grand jury of the actual amount of the underpayment by the defendants to their employees and the specific amount that would have been withheld from payments to defendants due to the breach of the prevailing wage term of the contract. The court in Caridi noted that
“ridiculous as it would be to hold that the defendant could be charged with larceny of the entire contract amount, it would be equally ridiculous to hold that the defendants could doctor their books to deceive the HUD into paying the entire amount of the contract despite its deliberate breach of a negotiated term that would entitle HUD to withhold over $ 100,000.” (Caridi at *5.)
Here, the People have charged defendant with stealing all the money he received under the contract on the theory that the NYCTA would not have entered into the arrangement at all had defendant not misrepresented his identity. In Williams, Weisbard and other cases discussed herein the complainants undoubtedly would never have entered into the contracts had they not been deceived by the defendants’ false representations. But to fraudulently induce a party to enter into a contract does not constitute larceny. “If the owner intends to part with the property, and delivers the possession, there can be no larceny, although fraudulent means have been used to induce him to part with the goods.” (Zink v People, 77 NY 114, 124-125 [1879].)
In this case, no evidence of injury or loss to the NYCTA was shown from which an intent to deprive the NYCTA of property could be inferred. (Penal Law § 155.05 [1].) Defendant produced the IMEs and related reports that he was paid for. Contrary to the People’s claim that the product was tainted or failed to do what was claimed for it, the People have been unable to produce evidence to support that claim. Defendant did not misrepresent the nature or quality of the service he intended to, and did, provide. There is no showing that defendant intended “to get something for nothing,” or that injury to the NYCTA was a reasonably probable result of defendant’s use of a fictitious name. (See United States v Regent Off. Supply Co., 421 F2d 1174 [2d Cir 1970].)
The People argue that the previous relationship between the NYCTA and defendant as outside counsel, in addition to the personal relationship between defendant and defendant *828 Jackson, so pervaded the IME process with conflicts of interest as to render the contractual commitment to perform the IME work a fraud. In particular, according to the prosecution, defendant’s role as the owner of a company involved in obtaining IMEs conflicted with his role as defense counsel for the NYCTA in cases involving personal injury claims where the IME evidence is utilized. As such, the People argue, the NYCTA did not receive the benefit bargained for because it did not agree to be provided with IMEs that were tainted by defendant’s conflicts of interest. Notwithstanding the People’s position that defendant’s involvement in procuring the IMEs posed a threat to the integrity of critical evidence in the defense of the personal injury lawsuits, the NYCTA has not been able to specify how the alleged taint attributable to the IMEs provided by Advance resulted in a loss to the NYCTA. Significantly, there is no allegation that the IMEs provided by Advance were not used, nor is there evidence that any compromise to the integrity of the reports adversely affected the NYCTA’s defense of any of the lawsuits.[4]
In summary, the elements required to establish larceny have not been met. There was no loss to the NYCTA and, consequently, no criminal intent to deprive the NYCTA of property may be inferred. While defendant’s falsehoods were indefensible and potentially the basis for a civil suit, they were not criminal.
Accordingly, there is insufficient evidence to sustain counts 1 through 12.
The Remaining Counts
The remaining counts charge falsifying business records in the first degree (counts 13 and 14) and offering a false instrument for filing in the first degree (counts 15 and 16).
Count 13 charges that defendant, with intent to defraud, made or caused a false entry in the business records of the NYCTA through the submission of a proposed contract to do business with and for the NYCTA — a contract in which he identified himself as James Douglas. Count 14 charges that defendant, with intent to defraud, made or caused a false entry in the business records of the NYCTA through the submission of an Internal Revenue Service (hereinafter IRS) W-9 form containing a false statement and false information, again involving his alias.
*829 Penal Law § 175.10 provides:
“A person is guilty of falsifying business records in the first degree when he commits the crime of falsifying business records in the second degree, and when his intent to defraud includes an intent to commit another crime or to aid or conceal the commission thereof.”
Penal Law § 175.05 provides:
“A person is guilty of falsifying business records in the second degree when, with intent to defraud, he:
“1. Makes or causes a false entry in the business records of an enterprise . . . .”
Falsifying business records in the first degree thus requires an intent to defraud that includes an intent to commit another crime or to aid or conceal the commission thereof. As discussed above, there is insufficient evidence from which an intent to appropriate the NYCTA’s property — that is, to commit larceny — could be inferred. Thus, the evidence will not support a finding that the element of intent to commit or conceal another crime, required for the first degree offense, has been met.
The lesser included charge of falsifying business records in the second degree requires simply “intent to defraud.” The term “intent to defraud” in article 175 crimes has been held to be broader than an intent to deprive another of property or money. (See Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 175.05 at 408-409.) In People v Schrag (147 Misc 2d 517 [Rockland County Ct 1990]), defendant was a police officer charged with falsifying business records in the first degree for filing a false police report. He argued that no intent to defraud was proved before the grand jury. The court found that Penal Law article 175 did not limit the term “intent to defraud” to property or pecuniary loss, and noted that the interests of an entity in keeping accurate business records goes beyond economic concerns and extends to rights of others which may be infringed by false records. The court in Schrag cited People v Kase (76 AD2d 532 [1st Dept 1980]), in which the defendant was charged with offering a false instrument for filing in the first degree, in support of its conclusion that it was sufficient to show that the government’s legitimate official action and purpose were impeded.
In Kase, the defendant argued that there was no intent to defraud because the instrument in question, an application to transfer a liquor license in connection with the sale of a tavern, *830 did not have the potential to cause pecuniary loss to the State or political subdivisions thereof. The Appellate Division disagreed. “Whoever intentionally files a false statement with a public office or public servant for the purpose of frustrating the State’s power to fulfill [its obligation to carry out the law] violates the statute.” (Kase at 537-538.)
In People v Elliassen (20 Misc 3d 1143[A], 2008 NY Slip Op 51841[U] [Sup Ct, Richmond County 2008]), the defendants, police officers, were charged with falsifying business records in the first and second degrees for failing to prepare and file required reports and for failing to follow NYPD procedures. The defendants argued that the evidence was insufficient to establish an “intent to defraud.” The court held that “[i]t is not necessary to show a property or pecuniary loss from the fraud, and, in this case, it is sufficient to show that the NYPD’s legitimate official actions and purposes were impeded.” (Elliassen at *2.) The defendants’ conduct inhibited the Police Department’s ability to perform its duties and carry out its mission. The court noted that the inaccuracy of the records had ramifications beyond general business practices.
Given this precedent, this court does not agree with the view that defendant was not proved to have an “intent to defraud” sufficient to justify trial on the lesser second degree offense under counts 13 and 14. However, there is a more fundamental issue involved which precludes prosecution of these lesser included offenses. Penal Law § 175.00 (2) defines “business record” as “any writing or article, including computer data or a computer program, kept or maintained by an enterprise for the purpose of evidencing or reflecting its condition or activity.” The document alleged in count 13 to have caused a false entry to be made in the business records of the NYCTA is defendant’s proposal to do business with the NYCTA. It is a letter from Advance I.M.E. Co. dated April 9, 2007, addressed to Ms. Jacqueline Jackson, Director of Legal Support. It described the services Advance proposed to provide, that is, independent medical examinations and expert medical witnesses for all types of defense litigation. The letter set forth the proposed rate schedule, specifically, a flat fee rate of $400 per IME and $3,500 for court appearances. It listed several physicians and indicated that their curricula vitae were enclosed. It was signed by James Douglas, President/CEO.
The document alleged in count 14 to have caused a false entry to be made in the business records of the NYCTA is an Internal *831 Revenue Service W-9 form, “Request for Taxpayer Identification Number and Certification.” It is dated April 6, 2007, and contains the name, address and taxpayer identification number of Advance.[5] The signature on the form appears to be James Douglas. There is no typed or printed name of an individual owner of Advance. The form is used by the NYCTA to report to the IRS the amount paid to the taxpayer.
In People v Kisina (14 NY3d 153 [2010]), a physician charged with falsifying business records submitted documents to State Farm Insurance falsely claiming that she had given patients certain treatments. The court held that the false consultation reports and claim forms were business records because they “evidenced or reflected” State Farm’s legal obligation to reimburse providers for services. (See also People v Dove, 85 AD3d 547 [1st Dept 2011] [document relating to a coverage agreement reflected “activity” by the insurer].)
In People v Bloomfield (6 NY3d 165 [2006]), documents purporting to state the identity of the owner of a company were held to be business records because they could reflect or evidence the “condition” of that enterprise. The documents were letters falsely indicating that a Liberian diplomat was the beneficial owner of a corporation. The letters enabled the real owners of the corporation, United States citizens, to benefit from trading in securities which were permitted to be held only by non-U.S. citizens.
In People v Papatonis (243 AD2d 898 [3d Dept 1997]), the defendant made a false entry on a job application by indicating that he had never been convicted of a felony. The court held that the grand jury evidence failed to establish that the employment application was kept or maintained for the purpose of evidencing or reflecting the condition or activity of the prospective employer. Notwithstanding that the application was presumably kept on file by the company, it was not a business record.
In this case, neither the business proposal nor the W-9 form reflects a legal obligation of the NYCTA, as the claim forms in Kisina did. There is no evidence that the NYCTA was obligated to keep, maintain, and pay out money in reliance on the false information submitted by defendant. (See People v Kisina at 160.) There is no view of the evidence which would support a *832 finding that the business proposal and the W-9 form are documents that are kept or maintained by the NYCTA for the purpose of reflecting its own condition or activity.
The April 9, 2007 letter is just a proposal. It does not indicate that an agreement had been reached. In that respect, the letter is similar to the job application in the Papatonis case, in which the Third Department held that a misrepresentation on the application did not reflect the condition or activity of the enterprise. The W-9 form was submitted to the NYCTA together with the proposal on April 9, 2007. Since the defendant had not yet been selected to provide vendor services, the form was not part of a business record kept or maintained for the purpose of evidencing or reflecting the condition or activity of the NYCTA. Moreover, the W-9 was accurate insofar as it listed the taxpayer identification number issued to Advance by the Internal Revenue Service, information which the NYCTA would have been obligated to report to the IRS when and if it retained Advance to provide IMEs.
As to counts 13 and 14, then, the first degree charges must be dismissed because there is no proof defendant intended the commission or concealment of a crime. Even the lesser second degree charges cannot be maintained, because the documents at issue are not business records of the NYCTA.
Counts 15 and 16 charge offering a false instrument for filing in the first degree (Penal Law § 175.35) relating to the proposed contract to do business and the Internal Revenue Service W-9 form, respectively. Penal Law § 175.35 reads as follows:
“A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation.”
As previously noted, with respect to Penal Law article 175 crimes, the term “intent to defraud” does not require an intent to deprive the state of money or property, but rather intent to frustrate legitimate state interests and processes. (See People v *833 Kase, 76 AD2d 532 [1980]; People v Vanguard Meter Serv., 160 Misc 2d 685, 693 [1994].) Maintaining a fair vendor selection process free of any potential conflicts of interest is a legitimate function of the NYCTA. By concealing his true identity from the NYCTA, defendant created the potential for impeding the NYCTA’s ability adequately to defend itself in personal injury lawsuits. Even more fundamentally, identifying vendors accurately is a legitimate function of the NYCTA. The evidence presented to the grand jury was legally sufficient to establish that defendant submitted the business proposal and the IRS W-9 form to the NYCTA knowing the two documents contained false information, with the intent to frustrate legitimate state interests. Defendant’s motion to dismiss counts 15 and 16, charging offering a false instrument for filing in the first degree is denied.
In accordance with the foregoing, defendant’s motion to dismiss is granted as to count 1, conspiracy in the fifth degree, charging an agreement to commit grand larceny in the second degree, and as to counts 2 through 12, charging various degrees of larceny. In addition, the motion to dismiss counts 13 and 14, charging falsifying business records in the first degree, is granted. The motion to dismiss counts 15 and 16 is denied.

. Both defendants were charged in the indictment, but a motion to sever was granted and this motion to dismiss is decided as to defendant Headley only.

. In addition, the People assert in a letter submitted to the court on January 30, 2012 that defendant Headley made substantial cash deposits into the codefendant’s personal checking account several months after the co-defendant hired defendant’s company.

. Larceny may also be committed if the property received is of no value or of lesser value than the terms of the contract specified.
“While larceny traditionally is committed by a taking of property where nothing is left in return, in a transaction where an exchange is performed, larceny may also be committed in an exchange where the property received is of no value, such as where counterfeit money was used or where the diamond is fake. Where the exchange had a shortfall, as where a proposed sale of one hundred shares of stock was consummated, but the seller delivered seventy-five shares, only the agreed value of the missing twenty-five shares would be stolen.” (People v Morris at *38.)

. There is no allegation that Advance procured IMEs and reports in any of the cases which defendant handled as outside counsel.

. The taxpayer identification number on the W-9 was issued by the IRS to John Headley, not “James Douglas.”